Filed 2/4/14 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MARKET LOFTS COMMUNITY ASSOCIATION, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> 9TH STREET MARKET LOFTS, LLC et al., <br><br> Defendants and Respondents. | B245558 <br><br> (Los Angeles County Super. Ct. No. BC472621) <br><br> **ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING** <br><br> **[NO CHANGE IN JUDGMENT]** |

THE COURT:*

It is ordered that the opinion filed herein on January 7, 2014, be modified as follows:

On page 9, the first full paragraph, beginning "With respect to the other causes of action" is deleted and the following paragraph is inserted in its place:

> With respect to the other causes of action, the HOA has standing to sue as a representative of the individual homeowners. Code of Civil Procedure section 382 provides in part that "when the question is one of a common or

---

\*       BOREN, P. J., ASHMANN-GERST, J., FERNS, J.†

†       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all." "There are two forms of representative actions: those that are brought as class actions and those that are not." (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 977, fn. 2.) The Developers argue that the HOA must, and cannot, meet the requirements for a class action in bringing the sixth cause of action for unfair business practices. The Developers rely on the companion cases of *Arias, supra*, at page 980 and *Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court* (2009) 46 Cal.4th 993, 998, which analyzed Proposition 64's amendment of the unfair competition law and concluded that representative actions brought under this law must qualify as class actions. But the Developers did not raise the issue of class action requirements as a ground for their demurrer to this cause of action. Indeed, in their reply brief to the demurrer, the Developers asserted that it was "unclear whether Plaintiff actually intends this to be a class action." We therefore offer no opinion on whether the HOA has or can meet the requirements of a class representative.

There is no change in the judgment.


Respondent's Petition for Rehearing is denied.

Filed 1/7/14 (unmodified version)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MARKET LOFTS COMMUNITY ASSOCIATION,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>9TH STREET MARKET LOFTS, LLC et al.,<br><br>    Defendants and Respondents. | B245558<br><br>(Los Angeles County Super. Ct. No. BC472621) |

        APPEAL from a judgment of the Superior Court of Los Angeles County. Richard Edward Rico, Judge.  Reversed.

        Freeman, Freeman & Smiley, Todd M. Lander and Tracy R. Daub for Plaintiff and Appellant.

        Law Offices of Stephen D. Marks, Stephen D. Marks; Katten Muchin Rosenman, Gregory S. Korman, Andrew J. Demko and Johanna R. Bloomfield for Defendants and Respondents.

_____

A homeowner's association appeals from the judgment of dismissal following the sustaining of a demurrer without leave to amend its second amended complaint (SAC). The trial court sustained the demurrer on the ground that the association lacked standing both on its own behalf and as a representative of the homeowners to assert claims against the developers relating to contractual parking rights. We reverse the judgment of dismissal.

## FACTUAL AND PROCEDURAL BACKGROUND

**The Parties**

Appellant is Market Lofts Community Association (HOA), which is the homeowner's association for the condominium owners at a mixed-use upscale development called Market Lofts, located at the corner of 9th and Flower Streets in downtown Los Angeles, adjacent to the Staples Center. Retail spaces are located on the street level and 267 residential condominium units are located above. Respondents are essentially two sets of developers—the developer of Market Lofts (referred to as 9th Street) and the developer of an adjacent parking structure that contains 319 parking spaces for the Market Lofts condominium owners (referred to as CIM).[1]

**Allegations of the SAC**

The SAC alleges the following:

On May 11, 2006, the Developers entered into a "PARKING LICENSE AGREEMENT" (License Agreement). At this time, construction of Market Lofts had not been completed and the HOA had not been formed. Pursuant to section D of the License Agreement, which is attached to the SAC, CIM agreed to grant to 9th Street "*for the benefit of the residential homeowner's association (the 'HOA')* to be formed in connection with the sale of residential condominium units in the Market Lofts Project

---

[1]    Respondents shall be referred to collectively as "the Developers." 9th Street consists of respondents 9th Street Market Lofts, LLC; 645 9th Street, LLC; and the Lee Group, Inc. CIM consists of CIM/830 S. Flower, LLC; CIM Market at 9th & Flower, LLC; CIM/8th & Hope, LLC; and CIM Group, L.P. Respondents also include Jeffrey Lee (Lee); Michael Adler (Adler); and David Magdych (Magdych).

*and the owners and occupants of the residential units* . . . a license to use the Market Lofts Parking Spaces, which shall be appurtenant to the Market Lofts Property." (Emphasis added.)

Section 2.1 of the License Agreement specifies that the license granted is "perpetual" for the exclusive use of the 319 parking spaces, and that the license "shall be at no cost" to 9th Street, except for the obligation to pay its proportionate share of "CAM Charges" (common area maintenance) to CIM. Section 2.5 provides that the license is "irrevocable." Section 13 states that "Upon the First Closing [defined as the close of escrow for the first residential unit sold], [9th Street] shall assign or sub-license its rights and obligations under this Agreement to the HOA. . . . [T]he terms and conditions of this Agreement shall be covenants that run with the land . . . ."

The HOA was formally incorporated on January 10, 2007, and the first sale of a Market Lofts condominium occurred later that year.

On January 24, 2007, the HOA and 9th Street entered into a "Parking Sub-License Agreement" (Sub-License), which is also attached to the SAC. At that time, respondents Lee, Adler and Magdych comprised a "controlling majority" of the HOA's board of directors and "each was simultaneously serving as an agent, employee, partner and/or member of the 9th Street and/or CIM defendants." According to the SAC, rather than sublicensing its rights under the License Agreement to the HOA, 9th Street and the other respondents engaged in self-dealing by using the Sub-License "to strip the Association of many of the rights afforded it under the License Agreement and concurrently impose on it financial and other obligations in direct contravention of the terms of [the License Agreement]."

For example, while 9th Street granted to the HOA a sublicense for the exclusive use of the 319 parking spaces pursuant to section 2.1 of the Sub-License, Section 3.1 provides that the HOA will pay 9th Street a monthly fee of $75 for each parking space, to be increased annually by 5 percent, and to be adjusted every 10 years to the prevailing market rate for similar parking. Section 4 provides that the term of the Sub-License is the earlier of the date of termination of the Covenants, Conditions, Restrictions and

Reservation of Easements for the Market Lofts Project (CC&R's) or 49 years from the date of the Sub-License with the HOA being permitted to renew the Sub-License no more than five successive 10-year periods.  Section 17.6 provides a late fee of 18 percent for any late payment.  The SAC details numerous other provisions in the Sub-License that differ from the License Agreement and that "limit the rights of the Association and its members in various respects, all of which contravene the License Agreement."

The CC&R's were signed by respondent Lee as both developer and declarant, and were recorded in the Los Angeles County Recorder's Office on May 23, 2007. According to the SAC, the CC&R's "are notable not for the information provided in their 80 pages, but rather for what they fail to disclose," namely, that "the License Agreement plainly extended a perpetual and irrevocable license to the Association and the homeowners."  The SAC alleges that at paragraph 3 of the CC&R's, which is attached to the original and first amended complaints but not to the SAC, "the Sub-License is identified as the governing document by which 'Declarant has granted a sublicense to the Association for the benefit of the Owners and other "Permitted Users" to use the parking spaces.'"  The CC&R's were distributed to prospective purchasers in advance of their acquisition of the residential units.  The Sub-License and License Agreement were buried in a "massive package" of documents submitted to prospective purchasers of the Market Lofts units, and there was no identification or specific disclosure of the existence of the two agreements or "the critical distinctions in their terms."

It was not until January 2011 that "the developer dominated Association Board gave way to one controlled by homeowners with no ties to the Defendants," and "only then, was the [HOA] able to investigate these circumstances comprehensively and initiate ameliorative steps necessary to restore the rights intended by and set forth in the License Agreement."

The HOA and its members have been damaged in excess of $1 million in paid parking fees.  The SAC further alleges that in the event a homeowner refuses to pay the monthly parking fee, the HOA is obligated to do so.

**Causes of Action**

The HOA first sued the Developers on November 1, 2011. On August 22, 2012, the HOA filed the SAC, which contains two causes of action for declaratory relief, plus causes of action for breach of fiduciary duty, breach of the License Agreement, concealment, unfair business practices, and rescission of the Sub-License. The SAC alleges in both declaratory relief causes of action that the HOA and the Developers dispute their rights under the License Agreement and the Sub-License, and that the HOA seeks a declaration that the Sub-License is void and of no force and effect to the extent that it conflicts with the License Agreement. The HOA brings all other causes of action on its own behalf and as a representative of the condominium owners.

**The Demurrer Pleadings and Ruling**

The Developers filed a consolidated demurrer to each cause of action in the SAC. The HOA opposed the demurrer, which the trial court sustained without leave to amend on the sole ground that the HOA lacked standing to sue. The trial court concluded that "because the individual homeowners here paid the alleged illegal parking fees and Plaintiff only collected them, Plaintiff has not shown that it suffered an injury such that it has standing." The HOA then filed this appeal.

DISCUSSION

**I. Standard of Review**

We review de novo a trial court's sustaining of a demurrer without leave to amend, exercising our independent judgment as to whether a cause of action has been stated as a matter of law. (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 300; *Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125.) We assume the truth of properly pleaded allegations in the complaint and give the complaint a reasonable interpretation, reading it as a whole and with all its parts in their context. (S*top Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 558; *People ex rel. Lungren v. Superior Court, supra,* at p. 300.) We may disregard allegations which are contrary to law or to judicially noticed facts. (*Wolfe v. State Farm Fire & Casualty Ins. Co.* (1996) 46 Cal.App.4th 554, 559–560.) "On appeal, we do not review the validity

of the trial court's reasoning but only the propriety of the ruling itself." (*Rodas v. Spiegel* (2001) 87 Cal.App.4th 513, 517.) Thus, the judgment of dismissal will be affirmed if it is proper on any of the grounds raised in the demurrer, even if the trial court did not rely on those grounds. (*Jackson v. Doe* (2011) 192 Cal.App.4th 742, 750–751.) We apply the abuse of discretion standard in reviewing a trial court's denial of leave to amend. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318; *Hernandez v. City of Pomona* (1996) 49 Cal.App.4th 1492, 1497–1498.)

## II.  The Trial Court Erred in Sustaining the Demurrer on the Lack of Standing

### A.  *Declaratory Relief Causes of Action*

The first and second causes of action in the SAC seek declaratory relief with respect to the License Agreement and the Sub-License. We agree with the HOA that it has standing to bring these two causes of action on its own behalf.

Code of Civil Procedure section 1060 provides in part that "[a]ny person interested under a written instrument, . . . or under a contract, . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action or cross-complaint in the superior court for a declaration of his or her rights and duties in the premises, including a determination of any question of construction or validity arising under the instrument or contract."

As the court explained in *Ludgate Ins. Co. v. Lockheed Martin Corp.* (2000) 82 Cal.App.4th 592, 606: "All that Code of Civil Procedure section 1060 requires is that there be [an] 'actual controversy relating to the legal rights and duties of the respective parties.' . . . A cardinal rule of pleading is that only the ultimate facts need be alleged. [Citation.] In a declaratory relief action, the ultimate facts are those facts establishing the existence of an actual controversy. (Code Civ. Proc., § 1060.) . . . However, to be entitled to declaratory relief, a party need not establish that it is also entitled to a favorable judgment. . . . 'A complaint for declaratory relief is legally sufficient if it sets forth facts showing the existence of an actual controversy relating to the legal rights and duties of the parties under a written instrument or with respect to property and requests that the rights and duties of the parties be adjudged by the court. [Citations.] If these

requirements are met and no basis for declining declaratory relief appears, the court should declare the rights of the parties whether or not the facts alleged establish that the plaintiff is entitled to [a] favorable declaration. [Citations.]'" (See also *Alameda County Land Use Assn. v. City of Hayward* (1995) 38 Cal.App.4th 1716, 1722 [If the pleaded "facts reveal an actual controversy exists between the parties, the complaint is legally sufficient for declaratory relief"].)

The HOA is an interested party because it is a directly named beneficiary of the License Agreement and is a direct contracting party to the Sub-License. Thus, if the HOA has alleged an actual controversy, it is entitled to seek a declaration of the rights imposed and duties afforded under the License Agreement and the Sub-License. Contrary to the Developers' assertion, the SAC alleges an actual controversy. The SAC details the material differences in the two agreements, and alleges: "At present, the Association is not enjoying the full benefits of the License Agreement and cannot confer on its member owners the perpetual parking rights prescribed by that agreement." The SAC also alleges: "There is currently a dispute regarding the efficacy of the License Agreement and the Sub-License, and of the Association's and its members' rights under these agreements. The Association alleges that it is entitled to the rights set forth in the License Agreement, and that to the extent the Sub-License conflicts with those rights, it is ineffective. The Association is informed and believes, and on that basis alleges, that the Defendants, and each of them, contest the Association's claims and allege otherwise." The HOA seeks numerous declarations regarding the two agreements, including a declaration that the Sub-License is of no force and effect to the extent it conflicts with the License Agreement.

The trial court adopted the Developers' argument that the HOA lacks standing to bring the declaratory relief claims because the HOA is actually seeking a declaration of its members' rights, rather than its own, since the members pay the parking fees. But this argument overlooks that the HOA is a direct beneficiary of the License Agreement and is a contracting party to the Sub-License. If the Developers' argument were correct, then the HOA would be powerless to seek a determination of its own rights under either

contract. The law allows any party with an interest in a contract to pursue a declaration of rights as to that instrument when an actual controversy exists. (Code Civ. Proc., § 1060.)

The Developers' additional argument that there is no actual controversy is also without merit. The Developers essentially ignore the License Agreement and focus on the Sub-License, asserting that the HOA understands its obligations under the Sub-License, i.e., to collect parking charges from its members and disburse them to 9th Street. But this argument takes an overly simplistic view of the SAC. The HOA is not asking the trial court to merely interpret the terms of the Sub-License. Rather, the HOA is asking the trial court to resolve the interplay between the two agreements. In other words, the HOA contends that the License Agreement must govern the parking arrangements and that the Sub-License is invalid, while the Developers dispute this contention.

In our opinion, the SAC alleges an actionable dispute between the HOA and the Developers, and the HOA has standing to seek a resolution of this dispute. The trial court therefore erred in sustaining the demurrer to the two declaratory relief causes of action.

### B. Remaining Causes of Action

The HOA contends that it has standing to bring the remaining causes of action for breach of fiduciary duty, breach of the License Agreement, concealment, unfair business practices, and rescission of the Sub-License either by itself or as a representative of the homeowners. We agree.

With respect to the contract causes of action, it goes without saying that a party to a contract or one for whom the contract was intended to benefit may bring actions related to such contracts. Thus, the HOA is the real party in interest entitled to bring contract claims relating to the License Agreement and the Sub-License. The Developers' reliance on the argument that the HOA is not the real party in interest because it is seeking to enforce rights that belong to its members, not itself, is of no import. The SAC alleges that the HOA is directly obligated to pay the parking fees and that "in the event a

homeowner refused to pay the monthly fee, the Association is obligated to do so." For purposes of the demurrer, we must accept this allegation as true.

With respect to the other causes of action, the HOA has standing to sue as a representative of the individual homeowners. Code of Civil Procedure section 382 provides in part that "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all." While this statute is sometimes referred to as the "class action statute," it also sanctions representative, nonclass actions. "It may also be true that while all class suits are representative in nature, *all representative suits are not necessarily class actions*." (*Raven's Cove Townhomes, Inc. v. Knuppe Development Co.* (1981) 114 Cal.App.3d 783, 794 (*Raven's Cove*).) Thus, California courts have routinely allowed homeowner's associations to sue solely as the representative of its members. (See e.g., *id.* at p. 795; *Property Owners of Whispering Palms, Inc. v. Newport Pacific, Inc.* (2005) 132 Cal.App.4th 666, 672–673 ["'[e]ven in the absence of injury to itself, an association may have standing solely as the representative of its members'"]; *Salton City Etc. Owners Assn. v. M. Penn Phillips Co.* (1977) 75 Cal.App.3d 184, 189.)

The two requirements that must be satisfied for a representative action are an ascertainable class and a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. (*Raven's Cove, supra*, 114 Cal.App.3d at p. 795, citing *Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 704.) Here, there is plainly an ascertainable class—the homeowners. There is also a well-defined community of interest concerning the relevant questions of law and fact. Each homeowner is subject to the same parking charges and any invalidity of the Sub-License would affect the homeowners in the same manner. The homeowners are also the victims of the Developers' alleged self-dealing. Additionally, questions of necessity, convenience and justice likewise support the HOA's standing, because otherwise 267 homeowners would individually have to prosecute their claims. (See *Tenants Assn. of Park Santa Anita v. Southers* (1990) 222 Cal.App.3d 1293, 1304 ["we conclude that

considerations of necessity, convenience and justice provide justification for the use of the representative procedural device"].)

The Developers argue that the HOA cannot be allowed to proceed as a representative of the homeowners because the Developers would be deprived of defenses they would have against individual homeowners, such as the statute of limitations, notice, reliance, causation, waiver and estoppel. But these factual defenses pertain to the merits of the causes of action, an issue we are not concerned with at this initial pleading stage. Moreover, the Developers have not demonstrated why they would be precluded from pursuing these defenses or conducting discovery in this regard.

Additionally, even if individualized assessments are made, that does not destroy the commonality requirement. In *Raven's Cove, supra,* 114 Cal.App.3d 783, the homeowner's association sued to redress defects in common area landscaping and for damage to the exterior walls of individual units. Despite the fact that the damage to each unit would necessarily be individualized, the reviewing court found a sufficient commonality of interest because each owner had a similar beneficial interest in the outcome of the case. (*Id*. at p. 795.) The same is true here, where each homeowner would receive restoration of the parking rights provided in the License Agreement, if the HOA prevails.

To the extent the Developers also argue that the HOA lacks standing to sue because it is not claiming damage to a common area under Civil Code section 1368.3, such argument is without merit. This statute deals with the standing of a homeowner's association to sue "in its own name as the real party in interest" in specific matters, including damage to the common area and enforcement of the governing documents. (Civ. Code, § 1368.3.) This statute has nothing to do with a homeowner's association's standing to sue in a representative capacity.

### III. The Developers' Argument Regarding the CC&R's

The Developers spend much of their brief arguing that, apart from the issue of standing, the causes of action in the SAC are barred because the Sub-License is part of the governing CC&R's, a recorded document which is presumptively enforceable, and

which was provided to each prospective homeowner. Because a judgment of dismissal can be upheld on any ground raised in the demurrer, even when the trial court did not rely on that ground, we address the merits.

Under the Davis-Stirling Common Interest Development Act (Civ. Code, § 1350 et seq.) (Davis-Stirling Act), "covenants and restrictions in the declaration shall be enforceable equitable servitudes, unless unreasonable, and shall inure to the benefit of and bind all owners of separate interests in the development." (Civ. Code, § 1354, subd. (a).) "This statutory presumption of reasonableness requires that recorded covenants and restrictions be enforced "'unless they are wholly arbitrary, violate a fundamental public policy, or impose a burden on the use of affected land that far outweighs any benefit.'" [Citations.]" (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 239; *Nahrstedt v. Lakeside Village Condominium Assn.* (1994) 8 Cal.4th, 361, 382.) The Developers argue that the HOA failed to meet its "burden" of showing that the Sub-License parking fee, of which each homeowner had constructive, if not actual, notice was unreasonable.

The Developers' argument shows that they are trying to impose their own vision of what this case is about. This lawsuit is not a formal challenge to the CC&R's or an attempt to formally amend the CC&R's, for which the Davis-Stirling Act provides the procedural amendment requirements. (Civ. Code, §§ 1354, 1355.) As the HOA noted in its opposition to the demurrer, "[t]his litigation is centered around the efficacy of the License Agreement and Defendants' actions to unwind the Association's rights related to that contract."

The HOA acknowledges that the Sub-License is identified in the CC&R's, and that the homeowners had at least constructive notice of the existence of the Sub-License. What the HOA complains about is that neither the rights embodied in the License Agreement and how those rights differed from what the Sub-License provided or the Developers' alleged self-dealing in systematically unraveling the rights in the License Agreement by way of the Sub-License were disclosed to either the original HOA or to subsequent homeowners. As the HOA noted below, the Developers have conflated two

separate and unrelated concepts:  Notice and invalidity of the Sub-License.  The HOA therefore alleges causes of action for breach of the License Agreement and breach of fiduciary duties.  In *Raven's Cove, supra,* 114 Cal.App.3d 783, the appellate court stated that a "developer and his agents and employees who also serve as directors of an association [in its initial period], like the instant one, may not make decisions for the Association that benefit their own interests at the expense of the association and its members," and may therefore be sued for breach of fiduciary duty.  (*Id.* at p. 799.)

Even assuming the Davis-Stirling Act applies here, it does not provide a basis for sustaining the demurrer without leave to amend.  We are not prepared to say that the alleged self-dealing by fiduciaries of the HOA that violates the fundamental public policy of the need for trust and accountability with respect to certain special relationships is reasonable as a matter of law.  (See *Raven's Cove, supra,* 114 Cal.App.3d at pp. 800–801 ["the initial directors and officers of the Association had a fiduciary relationship to the homeowner members analogous to that of a corporate promoter to the shareholders.  These duties take on a greater magnitude in view of the mandatory association membership required of the homeowner.  We conclude that since the Association's original directors (comprised of the owners of the Developer and the Developer's employees) admittedly failed to exercise their supervisory and managerial responsibilities . . . and acted with a conflict of interest, they abdicated their obligation as initial directors of the Association"].)

## DISPOSITION

The judgment of dismissal following the sustaining of the demurrer to the SAC is reversed. The HOA is entitled to recover its costs on appeal.

**<u>CERTIFIED FOR PUBLICATION</u>.**


_____, J.
                     ASHMANN-GERST


We concur:


_____, P. J.
     BOREN


_____, J.[*]
     FERNS

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.