Filed 2/27/15  Baeyens v. Westside Nutrition CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ROBERT BAEYENS et al.,<br><br>   Plaintiffs, Cross-Defendants and Respondents,<br><br>      v.<br><br>WESTSIDE NUTRITION, LLC, et al.,<br><br>   Defendants, Cross-Complainants, and Appellants. | G049323<br><br>(Super. Ct. No. 30-2012-00607428)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Thierry Patrick Colaw, Judge.  Affirmed in part and reversed in part.

Wheatley Bingham & Baker and William G. Wheatley, Jr., for Defendants, Cross-Complainants and Appellants.

Burkhalter Kessler Clement & George, Alton G. Burkhalter and Eric Hardeman for Plaintiffs, Cross-Defendants and Respondents.

\*          \*          \*

Westside Nutrition, LLC, Health Eternal, LLC, Health and Beauty Pros, L.P., and Body Superior, L.P.,[1] appeal from the judgment entered after the trial court granted Robert Baeyens and Paul Baeyens[2] judgment on the pleadings as to the Limited Partnerships' answer to the Baeyenses' first amended complaint, the LLCs' answer to the same complaint, and the LLCs' cross-complaint against the Baeyenses. The trial court concluded the Businesses lacked standing to contest claims that were brought derivatively on their behalf or that were brought against parties other than the Businesses. Similarly, the court concluded the LLCs' could not restate their impermissible defenses as claims for relief in the cross-complaint.

The trial court primarily relied on our previous decision in *Patrick v. Alacer Corp.* (2008) 167 Cal.App.4th 995 (*Patrick*). There, we concluded a corporation may not defend against the merits of a derivative cause of action alleging breach of fiduciary duty or other misconduct by its directors or majority shareholders because a derivative claim is brought on the corporation's behalf and benefits the corporation, even though the corporation is named as a nominal defendant. We explained that allowing the nominal corporate defendant to defend on the merits would allow the controlling directors or shareholders to shift the cost of defending the derivative claims to the corporation against which the directors or shareholders allegedly committed the tortious conduct. (*Id*. at pp. 1005-1007.)

---

[1]     We refer to Westside Nutrition, LLC, and Health Eternal, LLC, collectively as the LLCs; Health and Beauty Pros, L.P., and Body Superior, L.P., collectively as the Limited Partnerships; and the LLCs and the Limited Partnerships collectively as the Businesses.

[2]     We refer to Robert Baeyens as Robert and Paul Baeyens as Paul. Collectively, we will identify them as the Baeyenses. We refer to them by their first names to avoid confusion and intend no disrespect. (See *In re Marriage of Balcof* (2006) 141 Cal.App.4th 1509, 1513, fn. 2.)

We affirm in part and reverse in part. We affirm the judgment on the Limited Partnerships' answer because the Limited Partnerships violated *Patrick* by defending derivative claims brought on their own behalf, and also improperly attempted to defend additional claims the first amended complaint alleges against other parties. We reverse the trial court's judgment on the LLCs' answer because the first amended complaint alleges two causes of action directly against the LLCs. *Patrick* only applies to derivative claims, and specifically allowed a corporation to defend a direct claim alleged against it even though the corporation could not defend derivative claims alleged on its behalf in the same action. Finally, we affirm the judgment on the LLCs' cross-complaint because the LLCs failed to allege an actual controversy existed between the LLCs and the Baeyenses, alleging only a controversy between the Baeyenses and Robert Wheatley, the other member of the LLCs.

I

FACTS AND PROCEDURAL HISTORY

In 2011, Paul and his father Robert created a business plan to develop an independent brand of health and nutritional supplements and also to sell other companies' supplements through online retailers, such as Amazon.com. Shortly after the Baeyenses started their business, Wheatley approached them and offered to invest. The three men agreed Wheatley would provide capital and "'rent free'" office space while the Baeyenses would contribute their business plan and manage the business day to day. Although the Baeyenses were not required to contribute any capital, they were promised a guaranteed monthly salary.

Under their agreement, the Baeyenses and Wheatley formed two limited partnerships: Body Superior, L.P., to develop an independent brand of supplements, and Health and Beauty Pros, L.P., to sell supplements manufactured by other companies. The Baeyenses and Wheatley are the only limited partners in the Limited Partnerships, and

3

Wheatley holds a 59 percent ownership interest in each partnership, while the Baeyenses hold a 40 percent interest. The Baeyenses and Wheatley also formed two limited liability companies: Westside Nutrition, LLC, to hold the remaining 1 percent interest in Body Superior, L.P., and to serve as its general partner, and Health Eternal, LLC, to hold the remaining 1 percent interest in Health and Beauty Pros, L.P., and to serve as its general partner. The Baeyenses and Wheatley are the only members in the LLCs, and Wheatley holds a 98 percent ownership interest in each of the LLCs, while the Baeyenses hold the remaining 2 percent interest.

The agreements forming the Limited Partnerships designated the general partners—i.e., the LLCs—as the managing partners with responsibility "for managing and conducting the ordinary and usual business and affairs of the Partnership." Accordingly, whoever controlled the LLCs also controlled the Limited Partnerships. The operating agreements for the LLCs designated Wheatley and Robert as the comanagers, although Wheatley had no role in the daily operations.

The Baeyenses claim the Businesses were initially prosperous under their management, but Wheatley soon derailed their success by breaching his contractual and fiduciary duties. For example, the Baeyenses allege Wheatley failed to make all his required capital contributions, demanded the Baeyenses make capital contributions not required under the agreements, demanded a salary when he provided no services, and charged the Businesses excessive rent despite his commitment to provide rent-free office space. When the Baeyenses told Wheatley they would resign if he did not stop this behavior, Wheatley demanded the Baeyenses execute a noncompete agreement because the parties' other agreements failed to include a prohibition on competing with the Businesses. The Baeyenses refused, claiming Wheatley's demand for a noncompete agreement was unconscionable.

In September 2012, Wheatley changed the locks on the offices and blocked the Baeyenses access to the Businesses' computers and records. As the majority member

4

in each of the LLCs, Wheatley announced he was unilaterally removing Robert as comanager of the LLCs and both of the Baeyenses from their positions in the four Businesses. Wheatley explained he took these actions because the Baeyenses had established a competing business. After seizing control of the Businesses, the Baeyenses contend Wheatley mismanaged and otherwise ran the Businesses into the ground, and also used their assets for his own gain.

In October 2012, the Baeyenses filed this action, claiming Wheatley lacked authority to remove Robert as comanager or take any of the actions affecting their participation because the LLCs' operating agreements required the unanimous vote of all members to remove a manager. The first amended complaint alleges 15 causes of action and names Wheatley and the four Businesses as defendants. The Baeyenses allege the first three causes of action against Wheatley in their own name for breach of the LLCs' operating agreements and an oral agreement concerning the formation and operation of the Businesses. The Baeyenses also individually allege the fourth cause of action for fraud against Wheatley. The fifth through eighth causes of action allege Wheatley breached his fiduciary duties. The Baeyenses allege these claims individually and as derivative claims on behalf of each of the four Businesses. The Baeyenses in their individual capacity allege the ninth cause of action for defamation per se against Wheatley.[3] The 10th and 11th causes of action for unjust enrichment and accounting are alleged against Wheatley by the Baeyenses individually and as derivative claims on behalf of the four Businesses. The 12th and 13th causes of action seek to dissociate the LLCs as the general partners of the Limited Partnerships. The Baeyenses allege these causes of action individually and as derivative claims on behalf of the Limited Partnerships. Finally, the 14th and 15th causes of action seek to dissociate Wheatley

---

[3] Lori Wheatley, Wheatley's sister, also is named as a defendant on the defamation cause of action, but she is not a party to this appeal.

from the Limited Partnerships. The Baeyenses allege these causes of action individually and as derivative claims on behalf of the Limited Partnerships.

The Limited Partnerships and the LLCs filed separate answers generally denying the first amended complaint's allegations and asserting several affirmative defenses, including a right of recoupment and set off based on the Baeyenses converting certain of the Businesses' funds to their own use, and reformation of the LLCs' operating agreements because the agreements failed to reflect the parties' true intent. The Businesses allege the LLCs' operating agreements mistakenly include two definitions of the phrase "Majority Vote," one defining it as a vote by more than half of the outstanding membership interests, and a second defining the phrase as a unanimous vote by all members. According to the LLCs, the parties intended to allow a simple majority of the membership interests to make final decisions. In addition to their answer, the LLCs joined with Wheatley in filing a cross-complaint against the Baeyenses asserting claims to reform the LLCs' operating agreements and for declaratory relief regarding the parties' rights under those agreements. The cross-complaint echoes the reformation allegations in the Businesses' answers.

The Baeyenses moved for judgment on the pleadings, separately challenging the Limited Partnerships' answer, the LLCs' answer, and the LLCs' cross-complaint in their entirety. The motion did not challenge any specific defense or cause of action. Citing our decision in *Patrick*, the Baeyenses argued the four Businesses lacked standing to defend the action because the claims were derivative claims alleged on the Businesses' behalf, not claims directed against them. Similarly, the Baeyenses argued the LLCs lacked standing to allege the cross-complaint's reformation and declaratory relief claims because those claims simply restated some of the affirmative defenses alleged in the answers.

The trial court agreed the claims involving the four Businesses were "derivative in nature" and that *Patrick* required the Businesses to remain neutral in this

6

action.  The court therefore granted the motion and entered judgment for the Baeyenses as to the Limited Partnerships' answer, the LLCs' answer, and the LLCs' cross-complaint.  The judgment stated, "This judgment does not adjudicate, in whole or in part, the derivative claims asserted against Defendant Robert Wheatley on the [Businesses'] behalf in [the Baeyenses'] First Amended Complaint."  This appeal followed.

## II

## DISCUSSION

A.   *Governing Legal Principles on Derivative Actions and the Benefitted Entity's Right to Participate*

"A derivative suit is a suit brought on behalf of a corporation for injury to the corporation, often for breach of fiduciary duty, mismanagement or other wrongdoing by corporate officers or directors, or for wrongs against the corporation by third parties." (*Vega v. Jones, Day, Reavis & Pogue* (2004) 121 Cal.App.4th 282, 297.)  Because a corporation has a separate legal existence from its shareholders, the shareholders have no direct cause of action or right of recovery against anyone who has harmed the corporation.  Instead, the shareholders must bring a derivative action to enforce the corporation's rights and redress its injuries if the board of directors fails or refuses to do so.  (*Grosset v. Wenaas* (2008) 42 Cal.4th 1100, 1108 (*Grosset*).)  Limited partnerships and limited liability companies similarly have legal existences separate from their partners and members, and therefore the principles governing shareholder derivative actions apply equally to actions brought by limited partners and members on behalf of their limited partnerships or limited liability companies.  (*Everest Investors 8 v. McNeil Partners* (2003) 114 Cal.App.4th 411, 425 [derivative action by limited partner]; *PacLink Communications Internat., Inc. v. Superior Court* (2001) 90 Cal.App.4th 958, 963-964 [derivative action by limited liability company member].)

7

"An action is deemed derivative "'if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock and property without any severance or distribution among individual holders, or it seeks to recover assets for the corporation or to prevent the dissipation of its assets.'" [Citation.] When a derivative action is successful, the corporation is the only party that benefits from any recovery; the shareholders derive no benefit "'except the indirect benefit resulting from a realization upon the corporation's assets.'" [Citation.]" (*Grosset*, *supra*, 42 Cal.4th at p. 1108, fn. omitted.) "A personal claim, in contrast, asserts a right against the corporation which the shareholder possesses as an individual apart from the corporate entity: 'If the injury is not incidental to an injury to the corporation, an individual cause of action exists.' [Citation.]" (*Denevi v. LGCC, LLC* (2004) 121 Cal.App.4th 1211, 1222.)

"'[T]he particular stockholder who brings [a derivative] suit is merely a nominal party plaintiff.' [Citation.] It is the corporation that 'is the ultimate beneficiary of such a derivative suit.' [Citation.] Thus, '[t]he corporation [is] the real party plaintiff in the action.' [Citation.] [¶] Though the corporation is essentially the plaintiff in a derivative action, '[w]hen a derivative suit is brought to litigate the rights of the corporation, the corporation . . . must be joined as a nominal defendant.' [Citation.] The corporation must be joined because 'its rights, not those of the nominal plaintiff, are to be litigated' [citation], and to offer the real defendants res judicata protection from later suits. [Citation.] Naming the corporation a defendant, not a plaintiff, follows from the joinder rules: 'If the consent of any one who should have been joined as plaintiff cannot be obtained, he may be made a defendant. . . .' [Citation.] So 'although the corporation is made a defendant in a derivative suit, the corporation nevertheless is the real plaintiff. . . .' [Citation.] [¶] . . . The only reason the corporation is named a nominal defendant [in a derivative action] is its refusal to join the action as a plaintiff. . . . In a real sense, the only claim a shareholder plaintiff asserts against the nominal defendant

8

corporation in a derivative action is the claim the corporation has failed to pursue the litigation." (*Patrick*, *supra*, 167 Cal.App.4th at pp. 1003-1004, fn. omitted.)

"'[T]he general rule for corporate participation in a derivative action is that "[u]nless the derivative action threatens rather than advances corporate interests, [the corporation] cannot participate in the defense on the merits."' [Citation.] 'Because the claims asserted and the relief sought in [the derivative] complaint would, if proven, advance rather than threaten the interests of the nominal defendants, the nominal defendants must remain neutral in [the] action.' [Citation.]" (*Patrick*, *supra*, 167 Cal.App.4th at p. 1007.) One of the practical and ethical reasons for this rule is that "'[a]llowing the nominal [corporate] defendants to defend on the merits in effect would allow [the individual defendant] to shift the cost of his defense of the derivative suit to the corporations against which he has allegedly committed tortious conduct. . . . [The individual defendant's] using his control of the nominal defendants to get them to defend on the merits would shift the cost of his defense to the corporations even if [the shareholder plaintiff's] claims are proven.' [Citation.]" (*Ibid.*)

Despite this rule, a corporation may assert defenses that do not challenge the merits of the derivative claims but rather the shareholder plaintiff's right or decision to bring those claims. For example, the corporation may challenge the plaintiff's standing to bring a derivative action or assert the "'special litigation committee'" defense, which allows the corporation to appoint a committee of independent directors to investigate the asserted claims and dismiss the action if they decide it is not in the corporation's best interest and the court determines they acted reasonably and in good faith. (*Patrick*, *supra*, 167 Cal.App.4th at p. 1005.)

In *Patrick*, a shareholder sued a corporation and its directors for fraud, breach of fiduciary duty, constructive trust, injunctive relief, unfair business practices, and declaratory relief. The trial court sustained the corporation's demurrer to the shareholder's entire complaint and the shareholder appealed. (*Patrick*, *supra*,

9

167 Cal.App.4th at pp. 1000-1002.) Applying the foregoing rules, we concluded the trial court erred in sustaining the corporation's demurrer to the breach of fiduciary duty, constructive trust, injunctive relief, and unfair business practices claims because they were derivative claims the shareholder brought against the directors on the corporation's behalf. As such, the corporation could not defend against the merits of those claims, and instead was required to remain neutral. (*Id*. at p. 1008.) But we also concluded the corporation properly could demur to the fraud and declaratory relief causes of action because the plaintiff brought those claims on her own behalf directly against the corporation; they were not derivative claims she brought on the corporation's behalf. (*Id*. at pp. 1015-1017; see *Sobba v. Elmen* (E.D.Ark. 2006) 462 F.Supp.2d 944, 946-947 [striking corporate defendant's answer to derivative complaint because corporation must remain neutral and may not defend on merits].)

B.     *The Judgment is Appealable*

The Baeyenses contend the trial court's judgment on the Businesses' answers and the LLCs' cross-complaint is not an appealable judgment because it did not dispose of the entire action. According to the Baeyenses, the Businesses are still nominal defendants on the derivative claims alleged in the first amended complaint and the one final judgment rule therefore bars this appeal as premature. We disagree and therefore deny the Baeyenses' motion to dismiss because the trial court's judgment disposed of all causes of action *between* the Baeyenses and the Businesses.

"The one final judgment rule, codified in Code of Civil Procedure section 904.1, subdivision (a)(1), states that an appeal in a civil case 'may be taken from . . . [¶] . . . a judgment, except . . . an interlocutory judgment," . . . . 'Judgments that leave nothing to be decided between one or more parties and their adversaries, or that can be amended to encompass all controverted issues, have the finality required by [Code of Civil Procedure] section 904.1, subdivision (a). A judgment that disposes of *fewer* than

10

all of the causes of action framed by the pleadings, however, is necessarily "interlocutory" [citation], and not yet final, as to any parties between whom another cause of action remains pending.' [Citation.] '[A]n appeal cannot be taken from a judgment that fails to complete the disposition of all the causes of action between the parties . . . .' [Citation.]" (*Abatti v. Imperial Irrigation Dist.* (2012) 205 Cal.App.4th 650, 662, original italics; see *First Security Bank of Cal. v. Paquet* (2002) 98 Cal.App.4th 468, 473 (*Paquet*).)

A judgment need not dispose of the entire action to be final and appealable. Rather, the one final judgment rule simply requires the judgment dispose of all the claims between the parties to the appeal. (*Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 437.) For example, a judgment that disposes of all causes of action between a plaintiff and one of two defendants is an appealable judgment even though the action remains pending in the trial court on the claims between the plaintiff and the other defendant. (*Millsap v. Federal Express Corp.* (1991) 227 Cal.App.3d 425, 430.) Similarly, a judgment that resolves all the claims alleged in a cross-complaint, but not all the claims alleged in the complaint, is a final appealable judgment if the remaining claims are not between the parties to the appeal on the cross-complaint. (*Paquet*, *supra*, 98 Cal.App.4th at p. 473.)

Moreover, the one final judgment rule applies separately to each capacity in which a party brings an action or is named as a defendant. For example, in a personal injury and wrongful death action, a judgment disposing of the surviving spouse's claims in her capacity as executor of the decedent's estate is final, even though the spouse's claims in her individual capacity and as guardian ad litem for the decedent's minor children are still pending. The surviving spouse in her capacity as executor "was a separate party as to whom there was no issue left to be determined." (*Dominguez v. City of Alhambra* (1981) 118 Cal.App.3d 237, 241; see *Paquet*, *supra*, 98 Cal.App.4th at p. 474.)

11

The *Paquet* court applied these principles in the context of a shareholder derivative action and cross-complaint. In *Paquet*, minority shareholders brought a derivative action on behalf of a corporation. The minority shareholders named the majority shareholders and directors, the corporation, and a bank involved in the challenged transactions as defendants, but the minority shareholders did not allege individual claims on their own behalf. The bank filed a cross-complaint against the minority shareholders, the majority shareholders and directors, and the corporation. The bank sought relief against the minority shareholders on the theory the corporation was their alter ego. The trial court sustained the minority shareholders' demurrer and entered a judgment dismissing the bank's cross-complaint against the minority shareholders. (*Paquet*, *supra*, 98 Cal.App.4th at pp. 471-472.)

On the bank's appeal, the *Paquet* court concluded the judgment dismissing the cross-complaint was a final appealable order because it disposed of all the claims between the bank and the minority shareholders in their individual capacity. (*Paquet*, *supra*, 98 Cal.App.4th at pp. 472-473.) Although the minority shareholders continued to prosecute the derivative claims alleged in their complaint against the bank, the judgment on the cross-complaint was a final appealable judgment because the minority shareholders alleged those claims in a representative capacity on the corporation's behalf, not in their individual capacity. (*Id*. at pp. 474-475.) As explained above, a shareholder bringing a derivative action is acting as a representative of the corporation and therefore is a plaintiff in name only because the action enforces the corporation's rights, not the individual shareholder's. The corporation is the real party plaintiff in the action. (*Patrick*, *supra*, 167 Cal.App.4th at pp. 1003-1004; *Paquet*, at pp. 474-475.)

Here, the judgment is a final appealable judgment because it disposes of all adversarial claims between the Baeyenses in their individual capacities and the Businesses. The only claims between the Baeyenses individually and the Businesses were the reformation and declaratory relief causes of action alleged in the

12

cross-complaint, and the judgment disposes of those claims. In the first amended complaint, the Baeyenses alleged individual claims against Wheatley on their own behalf and derivative claims against Wheatley on behalf of the Businesses, but the Baeyenses did not allege any claims in their individual capacities against the Businesses. Although the Businesses remain nominal defendants on the derivative claims, they are not adversaries of the Baeyenses in their individual capacity. To the contrary, the Baeyenses and the Businesses are aligned against Wheatley on the derivative claims. The continued pendency of the derivative claims therefore does not prevent the judgment from being a final appealable judgment. (*Paquet*, *supra*, 98 Cal.App.4th at pp. 474-475.)

The only claims in the first amended complaint that could potentially prevent the judgment from being a final appealable judgment are the 12th and 13th causes of action. The Baeyenses purport to allege these two causes of action individually and on behalf of the Limited Partnerships against Wheatley. Under Corporations Code section 15906.03, subdivision (e), these claims seek to dissociate the LLCs as the general partners of the Limited Partnerships based on Wheatley's alleged misconduct. On their face, the claims potentially qualify as claims between the Baeyenses individually and the LLCs. Corporation Code section 15906.03, subdivision (e), however, only authorizes expulsion of a general partner from a limited partnership "on application by the limited partnership." (Corp. Code, § 15906.03, subd. (e).) The statute does not allow a limited partner to individually assert a claim to expel a general partner. The Baeyenses therefore lack standing to pursue the 12th and 13th causes of action individually, and the claims may only be pursued derivatively on the Limited Partnerships' behalf. Accordingly, these causes of action are not adversarial claims between the Baeyenses individually and any of the Businesses, and they do not prevent the judgment from being a final appealable judgment.

13

C.	*The Trial Court Properly Granted Judgment on the Pleadings on the Limited Partnerships' Answer and the LLCs' Cross-Complaint, But Not the LLCs' Answer*

The Baeyenses' motion sought judgment on the pleadings on three separate pleadings—the Limited Partnerships' answer, the LLCs' answer, and the LLCs' cross-complaint. After addressing the governing standard for judgment on the pleadings motion, we separately address the Baeyenses' challenges to each of these pleadings.

1.	Governing Judgment on the Pleading Standards

A motion for judgment on the pleadings functions as a general demurrer, challenging whether a complaint or cross-complaint states facts sufficient to constitute a cause of action, or whether an answer states facts sufficient to constitute a defense. (Code Civ. Proc., § 438, subd. (c); *County of Orange v. Association of Orange County Deputy Sheriffs* (2011) 192 Cal.App.4th 21, 32 (*County of Orange*).) The court must accept the challenged pleading's factual allegations as true and disregard the controverted allegations of any opposing pleadings. (*County of Orange*, at p. 32; *Sebago, Inc. v. City of Alameda* (1989) 211 Cal.App.3d 1372, 1379-1380.) For example, on a motion for judgment on the pleadings challenging an answer, the court must accept as true the answer's factual allegations and disregard the controverted allegations in the complaint. (*Sebago*, at pp. 1379-1380.)

The court, however, "do[es] not accept as true 'any contentions, deductions or conclusions of fact or law contained [in the challenged pleading].' [Citation.]" (*County of Orange*, *supra*, 192 Cal.App.4th at p. 32.) Similarly, facts appearing in exhibits attached to or referenced in the pleading are given precedence over inconsistent allegations in the pleading. (*Sarale v. Pacific Gas & Electric Co.* (2010) 189 Cal.App.4th 225, 245.)

A motion for judgment on the pleadings may be made as to an entire pleading, or as to any cause of action or affirmative defense separately alleged in the challenged pleading. (Code Civ. Proc., § 438, subd. (c)(2).) If the motion challenges an

14

entire pleading without separately challenging individual causes of action or affirmative defenses, the motion must be denied if the pleading adequately alleges any cause of action or affirmative defense even though other causes of action or affirmative defenses are deficient. (*Warren v. Atchison, T. & S. F. Ry. Co.* (1971) 19 Cal.App.3d 24, 36 (*Warren*); *South Shore Land Co. v. Petersen* (1964) 226 Cal.App.2d 725, 734 (*South Shore*) ["if one of the defenses or counterclaims is free from the objections urged by demurrer, then a demurrer to the entire answer must be overruled"]; see *County of Orange*, *supra*, 192 Cal.App.4th at p. 32 ["In reviewing the trial court's grant of the motions for judgment on the pleadings under Code of Civil Procedure section 438, subdivision (b)(1), we apply the same rules governing the review of an order sustaining a general demurrer"].)

"We review de novo, and '"are required to render our independent judgment on whether a cause of action has been stated"'" [citation], without regard for the trial court's reasons for granting the motion. [Citation.]" (*County of Orange*, *supra*, 192 Cal.App.4th at p. 32.)

### 2. The Limited Partnerships' Answer

The Limited Partnerships contend the trial court erred in granting the motion for judgment on the pleadings as to their answer because the first amended complaint's first, second, 12th, and 13th causes of action threatened rather than advanced their interests. We do not agree with the Limited Partnerships' characterization of these four causes of action, and conclude the trial court properly granted the motion for judgment on the pleadings on the Limited Partnerships' answer.

On their own behalf, the Baeyenses allege the first and second causes of action against Wheatley for breach of the LLCs' operating agreements. These causes of action are not alleged as derivative claims and neither the Limited Partnerships nor the LLCs are named as actual or nominal defendants. The Baeyenses allege that Wheatley—

15

and Wheatley only—breached the LLCs' operating agreements when he unilaterally removed Robert as a manager, prevented the Baeyenses from participating in the Businesses' operation and management, and grossly mismanaged the Businesses. The Limited Partnerships cite no authority allowing a party to defend against a claim that is not alleged against that party. To the contrary, a party who asserts an interest in a claim that is not alleged against that party generally must make a motion to intervene and defend on behalf of the named party. (See Code Civ. Proc., § 387.) Without an order granting it leave to intervene, an unnamed party has no right to defend against a claim.

Citing *Patrick*, the Limited Partnerships nonetheless contend they are entitled to defend against these breach of contract claims because they will be adversely affected if the Baeyenses prevail. (See *Patrick*, *supra*, 167 Cal.App.4th at p. 1007 ["'the general rule for corporate participation in a derivative action is that "[u]nless the derivative action threatens rather than advances corporation interests, [the corporation] cannot participate in the defense on the merits"'"].) The Limited Partnerships contend these two causes of action require the court to decide the central issue in this litigation, i.e., whether the LLCs' operating agreements required a simple majority vote of all membership interests (as Wheatley contends) or a unanimous vote of all members (as the Baeyenses contend) to remove Robert as one of the LLCs' two managers. According to the Limited Partnerships, if the Baeyenses prevail on this issue Robert essentially would become a lifetime manager and never could be removed, gridlock would ensue on all issues on which Robert did not agree with Wheatley, and Robert would be able to manage the LLCs while also running a competing business he started with Paul. The Limited Partnerships contend that result would adversely affect them because the LLCs are the Limited Partnerships' general partner. This contention fails for two reasons.

First, *Patrick* applies only to derivative causes of action. These are not derivative causes of action and do not even name the Limited Partnerships as a party. Nothing in *Patrick* allows a party to defend against a claim that is not alleged against it.

16

Second, assuming *Patrick* applies, the Limited Partnerships' parade of horribles ignores the adverse affects both the Limited Partnerships and LLCs could suffer if Wheatley prevails on this issue—Wheatley would continue to mismanage the LLCs and the Limited Partnership and threaten their viability. At its core, this dispute is over what the members of the LLCs intended when they formed the LLCs. Both Wheatley and the Baeyenses accuse each other of wrongdoing that caused and continues to cause injury to the LLCs (and the Limited Partnerships). Although they have a separate legal existence from their members and manager, the LLCs only may act through those individuals. In this case, the Limited Partnerships contend the Baeyenses' causes of action are adverse to the Limited Partnerships' and the LLCs' interest only because Wheatley controls the four Businesses. If the Baeyenses were in control, it is likely the Limited Partnerships would claim Wheatley's actions are contrary to the Limited Partnerships' interest. These contrary positions demonstrate why the Limited Partnerships may not be permitted to take a side in this dispute. (See *Patrick*, *supra*, 167 Cal.App.4th at pp. 1007-1008.)

The Baeyenses allege the 12th and 13th causes of action on their own behalf and as derivative claims on the Limited Partnerships' behalf to expel the LLCs as the general partners. As explained above, the Baeyenses lack standing to bring these claims in their own name because the statutory provision authorizing the expulsion of a general partner only allows the limited partnership to seek such relief. (Corp. Code, § 15906.03, subd. (e).) Accordingly, these causes of action are properly viewed only as derivative claims brought on the Limited Partnerships' behalf and therefore *Patrick* prevents the Limited Partnerships from defending against these claims. (*Patrick*, *supra*, 167 Cal.App.4th at p. 1008.)

The Limited Partnerships contend they have a right to defend these claims because the claims seek relief well beyond the governing statute. The Limited Partnerships point to the first amended complaint's prayers for relief on these causes of

17

action, which request a court order that the Baeyenses "are authorized to select a new general partner for [the Limited Partnerships]." Although we agree the first amended complaint requests relief not authorized under Corporations Code section 15906.03, subdivision (e), that request does not confer upon the Limited Partnerships a right to defend claims they may not otherwise defend. The request for relief beyond what the statute authorizes does not mean these claims threaten rather than advance the Limited Partnerships' interests. The claims still seek to remove a general partner who allegedly threatens the financial viability of the Limited Partnerships through mismanagement.

Moreover, the Limited Partnerships assume the trial court will grant relief not authorized by the governing statute simply because the first amended complaint requests it. We assume the trial court will follow the dictates of the Corporations Code, which provides guidance when a general partner is dissociated or expelled. (Corp. Code, § 15908.01 [dissociating a general partner dissolves a limited partnership unless (1) at least one remaining general partner continues the business, or (2) where there is no remaining general partner, consent to continue the limited partnership and admit at least one general partner is given within 90 days by limited partners owning a majority of the rights to receive distributions]; see Friedman et al., Cal. Practice Guide: Corporations (The Rutter Group 2014) ¶ 2:35, p. 2-13.)

3. The LLCs' Answer

The LLCs also contend the trial court erred in granting the motion for judgment on the pleadings as to their answers because the first amended complaint's first, second, 12th, and 13th causes of action threatened rather than advanced their interests. In addition, the LLCs contend they may defend against the 12th and 13th causes of action because those are direct claims against the LLCs seeking to expel them as the Limited Partnerships' general partners. We agree with this latter contention.

18

As explained above, the Baeyenses allege the 12th and 13th causes of action individually and derivatively on the Limited Partnerships' behalf to expel the LLCs as the general partners, but the Baeyenses lack standing to bring these claims in their own name because only the limited partnership may seek to expel a general partner. (Corp. Code, § 15906.03, subd. (e).) The Baeyenses allege these claims against Wheatley because they seek to expel the LLCs based on Wheatley's conduct, but it is the LLCs, not Wheatley, that are the general partners subject to expulsion. Accordingly, although these two causes of action are derivative claims brought on the Limited Partnerships' behalf, they are not derivate claims brought on the LLCs' behalf. To the contrary, they are direct claims against the LLCs.

As legal entities distinct from their members, the LLCs have the legal right to defend claims against them in their own name. (Corp. Code, § 17701.05, subd. (b).) In *Patrick*, the corporation could not defend the derivative claims brought on its behalf, but it could defend the direct fraud claim because that claim sought relief not on behalf of the corporation, but against it. (*Patrick*, *supra*, 167 Cal.App.4th at p. 1016.) Similarly, the 12th and 13th causes of action in this case seek direct relief against the LLCs—to expel them as general partners—and therefore the LLCs may defend against these claims even though this action includes other causes of action that are brought derivatively on the LLCs' behalf. That the 12th and 13th causes of action are derivative claims brought on the Limited Partnerships' behalf does not change that result. The claims must be separately analyzed as to each party.

The Baeyenses contend the LLCs should not be allowed to defend these claims because they are based on the same conduct by Wheatley as the derivative breach of fiduciary duty claims brought on the LLCs' behalf. But that does not change that these are direct claims against the LLCs, and *Patrick* only applies to derivative claims brought on behalf of the LLCs. The Baeyenses cite no authority to justify extending *Patrick* to

19

apply to direct claims, and therefore we conclude the trial court erred in granting the Baeyenses judgment on the pleading as to the 12th and 13th causes of action.

This conclusion eliminates the need to separately address whether the LLCs may properly defend against the first and second causes of action for breach of the LLCs' operating agreements. Although the foregoing analysis denying the Limited Partnerships the right to defend against the first and second causes of action would apply equally to the LLCs, the LLCs' right to defend against the 12th and 13th causes of action required the trial court to deny the Baeyenses' motion as to the LLCs' entire answer. The Baeyenses sought judgment on the pleadings as to the LLCs' entire answer only, and therefore the LLCs' right to defend the 12th and 13th causes of action requires a denial of the entire motion. (*Warren*, *supra*, 19 Cal.App.3d at p. 36; *South Shore*, *supra*, 226 Cal.App.2d at p. 734; see *County of Orange*, *supra*, 192 Cal.App.4th at p. 32.)

4.    The LLCs' Cross-Complaint

The LLCs contend the trial court erred in granting the Baeyenses judgment on the pleadings as to the cross-complaint because the LLCs alleged sufficient facts to state a declaratory relief cause of action by alleging an actual controversy between the LLCs and the Baeyenses over the proper definition of the phrase "Majority Vote" in the LLCs' operating agreements. We disagree.

Code of Civil Procedure section 1060 authorizes "[a]ny person interested . . . under a contract, or who desires a declaration of his or her rights or duties with respect to another . . . in cases of actual controversy relating to the legal rights and duties of the respective parties, [to] bring an original action or cross-complaint . . . for a declaration of his or her rights and duties . . . ." (Code Civ. Proc., § 1060.) The fundamental basis for a declaratory relief claim is the existence of an actual, present controversy relating to the legal rights and duties of the parties. (*Market Lofts Community Assn. v. 9th Street Market Lofts, LLC* (2014) 222 Cal.App.4th 924, 931;

20

*Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 513.) "In order for a party to pursue an action for declaratory relief, the '"actual, present controversy *must be pleaded specifically . . . .*"' [Citation.] Thus, a claim must provide specific facts, as opposed to conclusions of law, which show a '"controversy of concrete actuality."' [Citation.]" (*Jenkins*, at pp. 513-514, original italics.) The party asserting the claim must be a party interested in the alleged controversy. (*Market Lofts*, at p. 931.) Declaratory relief may be refused where the court's declaration or determination is not necessary or proper at the time under all the circumstances. (Code Civ. Proc., §1061; *DeLaura v Beckett* (2006) 137 Cal.App.4th 542, 545.)

Here, the LLCs' cross-complaint states, "[t]his is an action for declaratory relief . . . to reform the [LLCs'] respective Operating Agreements and thereby correct a scrivener's error therein." The LLCs specifically allege the Baeyenses and Wheatley entered into the operating agreements to form the LLCs "to control, manage, and operate all aspects of the Limited Partnerships." The LLCs further allege the operating agreements fail to accurately reflect the Baeyenses' and Wheatley's true intent when they entered into the agreements because the agreements mistakenly include two definitions of the phrase "'Majority Vote,'" as described above. According to the LLCs, the parties intended the phrase to require a majority vote of all outstanding membership interests to remove a manager, and the operating agreements should be reformed to reflect that intent. The cross-complaint requests a judicial declaration to that effect.

The cross-complaint therefore specifically alleges an actual, present controversy between the Baeyenses and Wheatley as the parties who entered into the operating agreements. The copies of the operating agreements incorporated into the cross-complaint by reference confirm the LLCs are not parties to those agreements. The

21

LLCs do not allege how or why they are interested parties with standing to assert the cross-complaint's declaratory relief claim.[4]

As explained above, the Baeyenses and Wheatley dispute who controls and has the right to manage the LLCs. Both sides contend they are advancing the LLCs' interests. Wheatley merely is the member who has seized control of the LLCs and therefore has the ability to control their actions, such as directing the LLCs to join him in bringing the cross-complaint and to claim his position is in the LLCs' best interest. Wheatley's control over the LLCs, however, does not make the LLCs parties interested in the dispute between the Baeyenses and Wheatley. Accordingly, we agree with the trial court's conclusion the LLCs failed to allege a claim against the Baeyenses.

III

DISPOSITION

The judgment is affirmed in part and reversed in part. The judgment in the Baeyenses' favor on the Limited Partnerships' answer and the LLCs' cross-complaint is affirmed. The judgment the Baeyenses' favor on the LLCs' answer is reversed. In the interest of justice, the parties shall bear their own costs on appeal.


ARONSON, J.

WE CONCUR:


O'LEARY, P. J.


FYBEL, J.

---

[4] The LLCs do not address the cross-complaint's separate reformation claim.

22