Filed 3/30/23 (unmodified opn. attached)

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| RIVER'S SIDE AT WASHINGTON SQUARE HOMEOWNERS ASSOCIATION, <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF YOLO COUNTY, <br><br> Respondent; <br><br> RIVER'S SIDE LLC et al., <br><br> Real Parties in Interest. | C095860 <br><br> (Super. Ct. No. CV2017-1712) <br><br><br> ORDER MODIFYING OPINION AND DENYING REHEARING <br><br> [NO CHANGE IN JUDGMENT] |

ORIGINAL PROCEEDING in mandate. Samuel T. McAdam, Judge. Peremptory writ issued.

Williams & Gumbiner, Scott Williams and Beth C. Tenney for Petitioner.

Chapman & Intrieri, John W. Chapman, Mark G. Intrieri, J. Spencer Edgett and John F. Baumgardner for the Executive Council of Home Owners as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Christensen Hsu Sipes, Jennifer K. Stinnett and Meighan A. Cardenas for Real Parties in Interest.

THE COURT:

It is ordered that the opinion filed herein on March 6, 2023, be modified as follows:

On page 11, the last paragraph of section II, beginning "California has not adopted the Uniform Act" is deleted and the following paragraph is inserted in its place:

> California has not adopted either section 6.11 of the Restatement Third of Property, Servitudes or section 3-102(a)(4) the Uniform Act, and Plaintiff points us to no provision in California law that is analogous to section 6.11 or section 3-102(a)(4). We decline to adopt a *comment* to a Restatement section that California has not adopted.

There is no change in the judgment.

Petitioner's petition for rehearing is denied.


BY THE COURT:


           /s/
RENNER, Acting P. J.


           /s/
EARL, J.


           /s/
HOCH, J.*

_____

\* Retired Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| RIVER'S SIDE AT WASHINGTON SQUARE HOMEOWNERS ASSOCIATION, | C095860 |
| Petitioner, | (Super. Ct. No. CV2017-1712) |
| v. | |
| THE SUPERIOR COURT OF YOLO COUNTY, | |
| Respondent; | |
| RIVER'S SIDE LLC et al., | |
| Real Parties in Interest. | |

ORIGINAL PROCEEDING in mandate. Samuel T. McAdam, Judge. Peremptory writ issued.

Williams & Gumbiner, Scott Williams and Beth C. Tenney for Petitioner.

Chapman & Intrieri, John W. Chapman, Mark G. Intrieri, J. Spencer Edgett and John F. Baumgardner for the Executive Council of Home Owners as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Christensen Hsu Sipes, Jennifer K. Stinnett and Meighan A. Cardenas for Real Parties in Interest.

River's Side at Washington Square Homeowners Association (Plaintiff) is a homeowners association established to manage a development consisting of 25 residential units and common areas. It sued River's Side LLC et al. (Defendants) for construction defects in the residential units. Defendants demurred to six of the seven causes of action asserted against them, arguing a homeowners association lacks standing to sue on behalf of its members for defects in residential units that it does not own and has no obligation to repair. Plaintiff alleged it had standing to bring this action on behalf of its members pursuant to Civil Code section 945, Civil Code section 5980, and Code of Civil Procedure section 382. The trial court sustained the demurrer without leave to amend, holding that Plaintiff lacked standing under Civil Code sections 945 and 5980, and that Code of Civil Procedure section 382 was inapplicable.

Because the order sustaining the demurrer left one cause of action remaining, it is not immediately appealable, and Plaintiff thus challenges the order by petition for writ of mandate. "Extraordinary relief is generally not granted at the pleading stage. But an appellate court can do so when it concludes the trial court has deprived a party of an opportunity to plead his or her cause of action . . . and granting the petition will prevent a needless and expensive trial and reversal." (*Lacher v. Superior Court* (1991) 230 Cal.App.3d 1038, 1043.) We find that this is such a case.

As explained in more detail below, we conclude that Plaintiff has standing to bring claims for damages to the common areas pursuant to Civil Code sections 945 and 5980, and that it at least nominally alleged such damages. We further conclude that Plaintiff may have standing to bring claims for damages to the residential units that sound in contract or fraud if it can meet the requirements for bringing a representative action pursuant to Code of Civil Procedure section 382. Lastly, we hold Plaintiff should have

been granted leave to amend to cure any standing defect. We thus grant the petition for writ of mandate and direct the trial court to reverse its order granting the demurrer.

## FACTUAL AND PROCEDURAL BACKGROUND

Because we are reviewing an order sustaining a demurrer, we accept as true the factual allegations in the operative complaint. (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.)

Plaintiff is a homeowners association that was established to manage a common interest development (the development). The development consists of 25 residential units and one commercial unit, each of which is separately owned by Plaintiff's members. The development also includes common areas that are owned by Plaintiff.

The development was financed and constructed by a group of entities and individuals referred to as "the developers." Due to adverse market conditions, the developers were only able to sell three of the 25 residential units to individual buyers, and they sold the remaining 22 residential units in a bulk sale. Defendants River's Side LLC, Eric Roe, Tommy Le and Michael Schimmel acquired the units, renovated them, and sold them to individual buyers from September 2012 through February 2017.

The present action is a construction defect lawsuit filed by Plaintiff against the developers, various other entities involved in the design and construction process, and Defendants. Plaintiff alleges generally that there are "defects in the structures, components, and common areas" of the development. Attached to the complaint is an exhibit (Exhibit A) that identifies defects in six of the residential units in some detail. For example, in one of the units (278 McDowell Lane), there are signs of water intrusion under the stairs, in a powder room, and around the foundation. In another unit (291 McDowell Lane), the stucco around the windows is cracked. Exhibit A does not appear to identify any defects in or damage to the common areas.

Plaintiff ultimately settled with the developers. As part of the settlement, the developers assigned to Plaintiff their rights in any claims they have against third parties who are potentially liable for the claims asserted in the lawsuit, including Defendants.

Plaintiff asserted seven causes of action against Defendants, for (1) violations of statutory standards for residential construction contained in the Right to Repair Act (Civ. Code, § 895 et seq.); (2) breach of implied warranty; (3) "assigned rights" (i.e., Plaintiff is asserting the rights the developers had against third parties that were assigned to Plaintiff as part of the settlement agreement); (4) breach of contract; (5) intentional or negligent nondisclosure; (6) intentional or negligent misrepresentation; and (7) breach of fiduciary duty. As indicated above, Plaintiff alleged it had standing to bring this action on behalf of its members[1] pursuant to Civil Code sections 945 and 5980 and Code of Civil Procedure section 382.

Defendants demurred to all causes of action asserted against them except the cause of action for assigned rights, arguing, among other things, that Plaintiff lacked standing under Civil Code section 5980.[2] Civil Code section 5980 provides, among other things, that an association has standing to sue for damage to the common area or to a separate interest the association is obligated to maintain or repair. According to Defendants, the only common area in the development is a street known as Lot A, and Plaintiff is only required to maintain or repair (1) that common area, (2) the trees located in the public

---

[1]     Plaintiff does not bring this action on behalf of all its members, just on behalf of members who own 22 of the 25 residential units in the development. The owners of two of the units (273 Third Street and 287 McDowell Lane) filed their own lawsuit, and the owner of a third unit (275 McDowell) opted out of this lawsuit, and Plaintiff thus does not bring this action on their behalf.

[2]     Defendants also argued all claims were barred by the statute of limitations; the breach of contract claimed failed because Plaintiff was not a party to the contracts; the nondisclosure and misrepresentation claims were not pled with sufficient specificity; and the breach of fiduciary duty claim fails as a matter of law. The trial court did not reach these arguments.

4

right-of-way along a street in the front of the development, and (3) roof drains and connections within the city's right-of-way.[3] Defendants argued that none of the defects alleged in the complaint or identified in Exhibit A involve either the common areas or any portion of the individual units that Plaintiff is required to maintain or repair, and that Plaintiff thus did not have standing under Civil Code section 5980 to bring this action.

In its opposition, Plaintiff argued it had standing under Civil Code section 5980 because the complaint at least nominally alleged defects in the common areas. It also argued it had standing under Civil Code section 945 and Code of Civil Procedure section 382, which Defendants did not cite or discuss in their demurrer. Civil Code Section 945 is part of the Right to Repair Act, which sets forth standards for residential construction and gives homeowners the right to sue for violation of those standards. It provides, "associations and others having the rights set forth in Sections 5980 . . . shall be considered to be original purchasers and shall have standing to enforce the provisions,

---

[3]    In support of their demurrer, Defendants filed a request for judicial notice of the development's declaration of covenants, conditions and restrictions (CC&Rs), which identify the development's common areas and specify which portions of the development Plaintiff is obligated to repair and maintain. Plaintiff objected to the request on various technical grounds, including lack of authentication. The trial court granted the request and considered the CC&Rs when ruling on the demurrer, finding Plaintiff did not actually challenge the document's authenticity, and citing *Charnay v. Cobert* (2006) 145 Cal.App.4th 170, 174, footnote 2, for the proposition that a court may properly take judicial notice of recorded CC&Rs when ruling on a demurrer. Plaintiff renews its objection here, and we reject it for the same reasons the trial court did. (See also *Eisen v. Tavangarian* (2019) 36 Cal.App.5th 626, 641, fn. 12 [taking judicial notice of recorded CC&Rs pursuant to Evid. Code, § 452, subd. (c)]; *Palacin v. Allstate Ins. Co.* (2004) 119 Cal.App.4th 855, 860 [taking judicial notice of CC&Rs when ruling on demurrer].)

Plaintiff also opposes Defendants' motion for judicial notice of: (1) a construction defect complaint filed by 22 of Plaintiff's members after the demurrer in this case was sustained; and (2) various underlying documents in *Kohler Co. v. Superior Court* (2018) 29 Cal.App.5th 55. We deny the motion because none of the documents are relevant to our decision. (*Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063 ["only relevant material may be noticed"].)

5

standards, rights, and obligations set forth in this title." (Civ. Code, § 945.) Plaintiff asserted it was "beyond debate" it had standing under Civil Code section 945. Code of Civil Procedure section 382 provides, "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all." Plaintiff argued numerous decisions interpreting this provision have held it confers representative standing on a homeowners association to enforce its members' rights.

In its reply, Defendant argued Plaintiff did not have standing under Code of Civil Procedure section 382 or Civil Code section 5980. It cited, but did not discuss, Civil Code section 945.

The trial court issued a tentative ruling sustaining the demurrer without leave to amend, finding standing under Civil Code section 945 "is predicated upon compliance with" section Civil Code 5980, and none of the bases for standing in section Civil Code 5980 applied. The trial court did not mention Code of Civil Procedure section 382.

At the hearing on the demurrer, Plaintiff was given the opportunity to expand on its argument that all three statutes confer standing on it. Indeed, the trial court continued the hearing to a second day to give Plaintiff sufficient time to make its argument, stating, "This matter's going to be continued for oral argument. . . . I'm going to give you more time to make your case. . . . [¶] . . . [¶] I want to give you ample time to make all your arguments."[4]

---

[4] Plaintiff argues it was improper and a denial of due process for the trial court to consider whether it lacked standing under Code of Civil Procedure section 382 and Civil Code section 945 because the demurrer only challenged Plaintiff's standing under Civil Code section 5980. We find no denial of due process because Plaintiff was given an opportunity to make its arguments regarding all three statutes. We thus do not discuss this argument further.

Following oral argument, the trial court issued an order sustaining the demurrer without leave to amend. It analyzed Plaintiff's standing under all three statutes. It reaffirmed its conclusion that standing under Civil Code section 945 "is predicated upon meeting the standing requirements of . . . section 5980." It also found Plaintiff did not have standing under Civil Code section 5980 because the defects alleged in the complaint and identified in Exhibit A did not involve either the common area or a separate interest Plaintiff was required to maintain or repair. Finally, it found Code of Civil Procedure section 382 "does not apply to the instant action," and Plaintiff must instead meet "the specific standing requirements" of Civil Code section 5980, which it could not do. As for the case of *Raven's Cove Townhomes, Inc. v. Knuppe Development Co.* (1981) 114 Cal.App.3d 783 (*Raven's Cove*), which held Code of Civil Procedure section 382 conferred standing on a homeowners association to sue in a representative capacity for damage to individual units, the trial court held it was "not controlling" because it "was decided prior to the enactment of both the Davis-Stirling Act (governing common interest developments) and the Right to Repair Act (the basis for the instant action)."

Plaintiff filed a motion for reconsideration pursuant to Code of Civil Procedure section 1008[5] based on the "new" fact that, after the order sustaining the demurrer was entered, Plaintiff's members assigned Plaintiff their rights against Defendants. Plaintiff requested leave to amend to plead the assignments in order to cure the standing defect found by the trial court.

Defendants opposed the motion, arguing the assignments were not new within the meaning of Code of Civil Procedure section 1008, because Plaintiff could have obtained them before the trial court ruled on the demurrer if it had acted with reasonable diligence. Defendants also argued allowing leave to amend to plead the assignment would be futile,

---

[5] Code of Civil Procedure section 1008, subdivision (a), provides a party may ask a court to reconsider an order "based upon new or different facts, circumstances, or law."

7

because the amended complaint would not relate back to the original complaint, and the claims would thus be barred by the statute of limitations.

The trial court denied the motion for reconsideration, citing *Mink v. Superior Court* (1992) 2 Cal.App.4th 1338, and other cases that teach a " 'party seeking reconsideration must provide not only new evidence but also a satisfactory explanation for the failure to produce that evidence at an earlier time.' " (*Id*. at p. 1342.) The trial court found Plaintiff failed to provide a sufficient explanation for why it could not have obtained the assignments prior to the hearing on the demurrer.

The trial court certified its order sustaining the demurrer for appellate review pursuant to Code of Civil Procedure section 166.1[6] on the ground that the threshold standing issue raises a controlling question of law as to which there are substantial grounds for difference of opinion, and there was virtually no chance the case would settle until that issue is resolved.

Plaintiff then filed the present petition for writ of mandate, challenging both the order sustaining the demurrer without leave to amend and the order denying the motion for reconsideration. We issued an order to show cause.[7]

---

[6] Code of Civil Procedure section 166.1 provides "a judge may indicate in any interlocutory order a belief that there is a controlling question of law as to which there are substantial grounds for difference of opinion, appellate resolution of which may materially advance the conclusion of the litigation."

[7] We also granted an application from the Executive Council of Home Owners to file an amicus curiae brief, and have considered that brief, as well as Defendants' response thereto.

## DISCUSSION

## I

### *Standard of Review*

On review of an order "sustaining a demurrer without leave to amend, the standard of review is well settled. We give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] Further, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law. [Citations.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse." (*City of Dinuba v. County of Tulare, supra*, 41 Cal.4th at p. 865.) The demurrer in this case was sustained on standing grounds, and "[s]tanding is a question of law subject to our independent review." (*Estate of Bowles* (2008) 169 Cal.App.4th 684, 690; see also *Martin v. Bridgeport Community Assn., Inc.* (2009) 173 Cal.App.4th 1024, 1032 ["Upon review of action on a demurrer, we review the determination of standing de novo"].) We also "independently construe statutory law, as its interpretation is a question of law on which we are not bound by the trial court's analysis." (*City of Morgan Hill v. Bay Area Air Quality Management Dist.* (2004) 118 Cal.App.4th 861, 870.)

## II

### *Threshold Issues*

We begin by briefly addressing two threshold issues that do not go to the merits of the petition.

#### A. Timeliness

Defendants argue we should deny the petition without reaching the merits because it was not timely filed. The petition challenges both the order sustaining the demurrer

9

and the order denying Plaintiff's motion for reconsideration. It was filed 95 days after notice of entry of the order sustaining the demurrer was served, and 33 days after the order denying the motion for reconsideration was served.

"Although there is no statutory time limit on a common law writ petition, appellate courts generally apply the same 60-day time limit applicable to appeals." (*McDermott Will & Emery LLP v. Superior Court* (2017) 10 Cal.App.5th 1083, 1100.) Defendants argue the petition is untimely because it was filed more than 60 days after notice of entry of the order sustaining the demurrer, which is the primary order that Plaintiff challenges. As Defendants acknowledge, however, the 60-day time limit for writ petitions "is not jurisdictional." (*Davis v. Superior Court* (2020) 50 Cal.App.5th 607, 615.) "[U]nlike appeals, appellate courts have discretion to decide a writ petition filed after the 60-day period, and typically look to whether there is any prejudice to the opposing party in doing so." (*McDermott, supra*, at p. 1100.) In addition to prejudice, appellate courts may deny a writ "where a party unreasonably delays in filing the petition." (*H. D. Arnaiz, Ltd. v. County of San Joaquin* (2002) 96 Cal.App.4th 1357, 1368.)

Here, Defendants do not suggest they have been prejudiced, and we find Plaintiff did not unreasonably delay in filing its petition, particularly where, as here, it first filed a motion for reconsideration. We thus exercise our discretion to decide the petition on the merits.

*B. Standing to Challenge Standing*

Plaintiff argues that Defendants lack standing to challenge its standing. Its argument is based on a comment to section 6.11 of the Restatement Third of Property, Servitudes. Section 6.11 provides, "Except as limited by statute or the governing documents, the association has the power to institute, defend, or intervene in litigation or administrative proceedings in its own name, on behalf of itself, or on behalf of member property owners in a common-interest community on matters affecting the community." (Rest.3d Property, Servitudes, § 6.11.) A comment to this section states, "If either the

10

members on behalf of whom the association sues or the association meets normal standing requirements, *the question whether the association has the right to bring a suit on behalf of the members is an internal question, which can be raised only by a member of the association.*" (Rest.3d Property, Servitudes, § 6.11, com. a, p. 216, italics added.) Plaintiff urges us to adopt this comment as the rule in California, which would mean Defendants cannot challenge Plaintiff's standing. We decline to adopt such a rule.

According to the comment to section 6.11, "The rule stated in this section is modeled on § 3-102(a)(4) of the Uniform Common Interest Ownership Act." (Rest.3d Property, Servitudes, § 6.11, com. a, p. 216.) Section 3-102(a)(4) of the Uniform Common Interest Ownership Act (the Uniform Act), in turn, provides an association "may institute, defend, or intervene in litigation or in arbitration, mediation, or administrative proceedings in its own name on behalf of itself or two or more unit owners on matters affecting the common interest community." Most courts that have interpreted this provision have held it permits an association to sue on behalf of two or more unit owners for damage to their individual units, because individual units are part of the common interest community, and damage to individual units is thus a matter affecting the common interest community. (See *Yacht Club II Homeowners Ass'n v. A.C. Excavating* (Colo.Ct.App. 2003) 94 P.3d 1177, 1180; *Univ. Commons Riverside Home Owners Ass'n v. Univ. Commons Morgantown, LLC* (W. Va. 2013) 741 S.E.2d 613, 617-618; *D.R. Horton, Inc. v. Eighth Judicial Dist. Court of Nev.* (Nev. 2009) 215 P.3d 697, 701-703.)

California has not adopted the Uniform Act, and Plaintiff points us to no provision in California law that is analogous to section 3-102(a)(4) of the Uniform Act. We decline to adopt a rule that is based on a Uniform Act provision that California has not adopted.

## III

### *Standing*

Having addressed the threshold issues, we now turn to the merits. Plaintiff challenges the trial court's ruling that it lacks standing to bring this action. Standing is

11

related to the requirement contained in Code of Civil Procedure section 367 that "[e]very action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute." (Code Civ. Proc., § 367.) The real party in interest is generally the person who has the right to sue under the substantive law. (*Estate of Bowles, supra*, 169 Cal.App.4th at p. 690.) "A party who is not the real party in interest lacks standing to sue because the claim belongs to someone else." (*Ibid*.) Plaintiff argues three separate statutes confer standing on it to bring this lawsuit: Civil Code section 5980, Civil Code section 945, and Code of Civil Procedure section 382. We discuss each statute in turn.

### A. *Civil Code Section 5980*

Civil Code section 5980 (hereafter section 5980)[8] provides: "An association has standing to institute . . . litigation . . . in its own name as the real party in interest and without joining with it the members, in matters pertaining to the following: [¶] (a) Enforcement of the governing documents. [¶] (b) Damage to the common area. [¶] (c) Damage to a separate interest that the association is obligated to maintain or repair. [¶] (d) Damage to a separate interest that arises out of, or is integrally related to, damage to the common area or a separate interest that the association is obligated to maintain or repair."

The trial court in this case found section 5980 did not confer standing on Plaintiff because none of the defects identified in the complaint involved either the common areas

---

[8]     Section 5980 has been renumbered numerous times over the years. As originally enacted in 1976, it was in section 374 of the Code of Civil Procedure; it was renumbered to Code of Civil Procedure section 383 in 1993; then moved to Civil Code section 1368.3 in 2004; and then moved to Civil Code section 5980 in 2014. (See Stats. 1976, ch. 595, § 2, p. 1439; Stats. 1979, ch. 169, § 1, p. 387; Stats. 1985, ch. 874, § 18, p. 2787; Stats. 1993, ch. 151, § 3, pp. 1396-1397; *Sierra Palms Homeowners Assn. v. Metro Gold Line Foothill Extension Construction Authority* (2018) 19 Cal.App.5th 1127, 1134, fn. 4.) To avoid confusion, we will refer to section 5980 and its predecessors as section 5980. We also discuss the history of section 5980 in some detail below.

12

or separate interests that Plaintiff was obligated to maintain or repair. Plaintiff forthrightly acknowledges "the heart of this case involves the defects in the members' homes, which they own and which plaintiff has no obligation to repair," and it thus also tacitly acknowledges that section 5980 does not grant it standing to pursue the heart of this case. Plaintiff argues, however, that it *does* allege there are defects in the common areas, which is true. In particular, it alleges (1) there are "defects in the structures, components *and common areas* of the Development," (italics added), and (2) "Plaintiff's members have sustained a loss of the use and enjoyment of their respective units *and the common areas* because of the Defects and resulting damages," (italics added). Plaintiff argues the trial court erred in disregarding these allegations.

The trial court does appear to have disregarded these allegations, and to have focused exclusively on the defects identified in Exhibit A to the complaint. As previously noted, Exhibit A lists defects in six of the individual units, and does not appear to list any defects in either the common areas or in individually owned areas Plaintiff is required to maintain (and Plaintiff does not suggest otherwise). As Plaintiff noted in its opposition to the demurrer, however, it alleges that the defects "*include*[*e*] those described in Exhibit A." (Italics added.) As alleged in the complaint, Exhibit A thus does not contain a comprehensive list of all defects, it contains only a partial list.

"The sole issue raised by a general demurrer is whether the facts pleaded state a valid cause of action, not whether they are true. No matter how unlikely or improbable, plaintiff's allegations must be accepted as true for the purpose of ruling on the demurrer." (*Kerivan v. Title Ins. & Trust Co*. (1983) 147 Cal.App.3d 225, 229.) Because Plaintiff at least nominally alleges there are defects in the common areas, we must accept this allegation as true, and this allegation establishes Plaintiff has standing pursuant to section 5980 to sue for those defects. The trial court thus erred in sustaining the demurrer, and we must reverse its decision.

13

It is clear, however, that Plaintiff sought extraordinary relief so that it could pursue "the heart of the case," not so that it could pursue what it refers to as the "lesser common area claims." We will thus proceed to consider whether the other two statutes confer standing on Plaintiff to pursue the heart of this case by bringing claims involving defects in its members' homes.

*B. Civil Code Section 945*

Civil Code section 945 (hereafter section 945) is part of what is commonly referred to as the Right to Repair Act (Civ. Code, § 895 et seq.), which was enacted in 2002. (*McMillin Albany LLC v. Superior Court* (2018) 4 Cal.5th 241, 246-247 (*McMillin*).) The Right to Repair Act " 'comprehensively revise[d] the law applicable to construction defect litigation for individual residential units' within its coverage. [Citation.]" (*McMillin, supra*, at p. 250.) "The [Right to Repair] Act sets forth detailed statewide standards that the components of a dwelling must satisfy. It also establishes a prelitigation dispute resolution process that affords builders notice of alleged construction defects and the opportunity to cure such defects, while granting homeowners the right to sue for deficiencies even in the absence of property damage or personal injury." (*Id.* at p. 247.) Plaintiff's first cause of action is brought pursuant to the Right to Repair Act, and is based on the allegation that Defendants violated the standards enumerated in the act.

Section 945 provides, in full, "The provisions, standards, rights, and obligations set forth in this title are binding upon all original purchasers and their successors-in-interest. *For purposes of this title, associations and others having the rights set forth in Sections 5980 and 5985[9] shall be considered to be original purchasers and shall have*

---

**9**      Civil Code section 5985 deals with a homeowners association's comparative fault.

14

*standing to enforce the provisions, standards, rights, and obligations set forth in this title*." (Italics added.)

The trial court found that, by referencing section 5980, section 945 essentially incorporates section 5980's standing requirements. Defendants agree with the trial court's interpretation.

Plaintiff interprets section 945 much more broadly. It argues that section 945 deems homeowners associations to be the equivalent of original purchasers (i.e., homeowners) for standing purposes, and that the statute confers standing on associations to the same extent an individual homeowner would have standing. To support its argument, Plaintiff cites the following principle of statutory construction: " 'We do not presume that the Legislature performs idle acts, nor do we construe statutory provisions so as to render them superfluous.' [Citation.]" (*Imperial Merchant Services, Inc. v. Hunt* (2009) 47 Cal.4th 381, 390.) Plaintiff argues the trial court's interpretation violates this principle, because if section 945 merely incorporates section 5980's standing requirements, then there was no need to enact section 945 (i.e., because section 5980 already existed), and section 945 is effectively rendered superfluous (i.e., because it merely repeats what section 5980 already says). We disagree.

When interpreting this statute, we are mindful that "courts should, if possible, give meaning to every word of a statute and avoid constructions that make any word surplusage." (*B.B. v. County of Los Angeles* (2020) 10 Cal.5th 1, 13.) We thus presume the Legislature's reference to section 5980 means something. If the Legislature's purpose in referring to section 5980 was not to incorporate that section's standing requirements, what was its purpose? Plaintiff argues its purpose was simply to define *what types of associations* have standing to assert their members' rights under the Right to Repair Act (i.e., those associations with standing pursuant to section 5980), and not to define *what types of claims* those associations have standing to assert (i.e., claims for damages to common areas, etc.). We disagree.

15

Section 5980 is part of the Davis-Stirling Common Interest Development Act, which is found in sections 4000 through 6150 of the Civil Code.  Section 5980 grants standing to an association to bring four types of claims, but does not define the term association.  The term " 'association' " is defined in Civil Code section 4080 as "a nonprofit corporation or unincorporated association created for the purpose of managing a common interest development."  (Civ. Code, § 4080.)  Section 5980 thus applies to associations, like Plaintiff, that were created to manage a common interest development (which we will refer to as homeowners associations or HOAs), and does not to apply to associations that were created for some other purpose (for example, to institute litigation or to increase the negotiating power of their individual members).

With this in mind, we return to section 945, and its provision that "associations . . . having the rights set forth in Section[] 5980 . . . shall be considered to be original purchasers and shall have standing to enforce" the Right to Repair Act.  If the Legislature had intended simply to define *what types of associations* have standing to enforce the Right to Repair Act, as Plaintiff argues, it easily could have done so by stating something like:  *Associations as defined in Civil Code section 4080* shall be considered to be original purchasers and shall have standing to enforce the Right to Repair Act.  Indeed, the Legislature used precisely that language in the definitional provisions of the Right to Repair Act.  For example, the Legislature defined the terms " '[c]laimant' " and " 'homeowner' " as "the individual owners of single-family homes, individual unit owners of attached dwellings and, in the case of a common interest development, *any association as defined in Section 4080*."  (Civ. Code, § 895, subd. (f), italics added.)  Similarly, it defined the term " 'close of escrow' " as "the date of the close of escrow between the builder and the original homeowner.  *With respect to claims by an association, as defined in Section 4080*, 'close of escrow' means the date of substantial completion, . . . or the date the builder relinquishes control over the association's ability to decide whether to initiate a claim under this title, whichever is later."  (Civ. Code,

16

§ 895, subd. (e), italics added.)  Thus, when the Legislature wants to indicate *what types of associations* it is referring to, it uses the phrase "associations as defined in Section 4080."

We find it telling that the Legislature did *not* use that phrase in section 945. Instead, it said "associations . . . *having the rights set forth in Section*[] *5980* . . . shall have standing to enforce" the Right to Repair Act.  (Section 945, italics added.)  When the Legislature uses different phrases in different parts of the same statutory scheme, we presume those phrases have different meanings.  (See *Regents of University of California v. Superior Court* (2013) 220 Cal.App.4th 549, 565.)  Section 5980 specifies *what claims* an HOA has standing to assert.  We thus find that the most reasonable interpretation of section 945 is that, by referencing section 5980, the Legislature intended to specify *what claims* an HOA has standing to assert under the Right to Repair Act—i.e., the same claims an HOA has standing to assert pursuant to section 5980.  We also note that our interpretation does not render section 945 superfluous, as Plaintiff argues, because section 945 specifies HOAs have standing to assert claims under the Right to Repair Act. We thus agree with the trial court, and hold that section 945 limits an HOA's standing to enforce the Right to Repair Act to the types of claims it has standing to bring pursuant to section 5980 (i.e., claims involving defects in common areas, etc.).  That also means, at least as to the Right to Repair Act claims, that section 945 does not confer standing on Plaintiff to bring the heart of this case.

## C.  *Code of Civil Procedure Section 382*

That leaves Code of Civil Procedure section 382 (hereafter section 382), which, unlike section 5980 and section 945, is a general statute that is not specific to HOAs.  It was first enacted in 1872, and has been amended only once since then.[10]  Section 382

---

[10]    As originally enacted, section 382 started with this provision:  "Of the parties to the action, those who are united in interest must be joined as plaintiffs or defendants."

17

provides, "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all." Although section 382 does not use the phrase class action, it is sometimes referred to as California's class action statute, (*Green v. Obledo* (1981) 29 Cal.3d 126, 146; *Williams v. Superior Court* (2013) 221 Cal.App.4th 1353, 1364), and it is generally cited as the statute that authorizes class actions, (see, e.g., *Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906, 913; *Richmond v. Dart Industries, Inc*. (1981) 29 Cal.3d 462, 470).

In addition to class actions, however, there is a line of cases that holds section 382 also authorizes another type of action, namely, a *representative action* that is not a class action. A leading practice guide refers to representative actions under section 382 as " 'creatures of case law.' " (Weil & Brown, Cal. Prac. Guide: Civil Procedure Before Trial (The Rutter Group 2022) ¶ 14.200.) In such an action, an association may be allowed to sue in a representative capacity on behalf of its members if certain requirements are met, even if the association itself suffered no damage and would otherwise lack standing to sue.[11] Plaintiff argues it is bringing precisely this type of action on behalf of its members, and that it has standing to do so pursuant to section 382 and the cases interpreting it.

One of the leading cases interpreting section 382 in this manner, and the only case cited by the trial court, is *Raven's Cove, supra*, 114 Cal.App.3d 783. The plaintiff in *Raven's Cove* was an HOA that governed a common interest development consisting of

(See *Jellen v. O'Brien* (1928) 89 Cal.App. 505, 509 [quoting language].) It was amended in 1972 to remove this provision, which had the effect of deleting "the old common law rule of compulsory joinder," which is not at issue here. (Leg. Com. com., Deering's Ann. Code Civ. Proc. (2015 ed.) foll. § 382, p. 581.)

[11] We note there is no standing issue if an association sues on its own behalf, for example, to protect its own trade name. (See *Ball v. American Trial Lawyers Assn.* (1971) 14 Cal.App.3d 289.) Standing issues only arise if an association sues on behalf of its members.

18

65 townhomes. It owned the common areas and was responsible for maintaining and repairing the roofs and siding of the individual units, but did not own the individual units. It sued the developer for defects in the siding on the individual units.[12] At the time of trial, section 5980 only gave an HOA standing to sue for damage to the common areas. The trial court thus granted the developer's motion for nonsuit on the ground the HOA lacked standing. The HOA appealed, and the appellate court reversed. (*Raven's Cove, supra*, at pp. 787-790.)

The court first considered whether an amendment to section 5980 that took effect after the entry of judgment granted the HOA standing. That amendment granted an HOA standing to sue for damages to those portions of individually owned units that the HOA was obligated to maintain or repair. The HOA argued it had standing pursuant to the amendment because it was obligated to repair the siding. The court, however, found the amendment did not apply because it went into effect after entry of judgment and was not retroactive, and that the HOA thus "did not have standing as to the cause of action for damage to the individual units pursuant to" section 5980. (*Raven's Cove, supra*, 114 Cal.App.3d at p. 793; see *id*. at pp. 791-793.)

The court then considered whether the HOA had standing to sue in a representative capacity pursuant to section 382, and found that it did. (*Raven's Cove, supra*, 114 Cal.App.3d at pp. 793-796.) The court acknowledged that section 382 authorizes class actions, but held it "need not deal with the question of whether the [HOA's] causes of action for the defects in the individual units qualified as a class action" because section 382 *also* conferred standing on the HOA to sue "in a *representative* capacity." (*Raven's Cove, supra*, at p. 793.) To support its holding, the

---

**12**     It also sued for defects to the common areas. Because it owned the common areas, there was no question that it had standing to pursue those claims. (*Raven's Cove, supra*, 114 Cal.App.3d at p. 790.)

19

court cited two earlier cases that had held an association of homeowners or residents had standing to sue in a representative capacity on behalf of its members—*Residents of Beverly Glen, Inc. v. City of Los Angeles* (1973) 34 Cal.App.3d 117 (*Residents of Beverly Glen*) and *Salton City Etc. Owners Assn. v. M. Penn Phillips, Co.* (1977) 75 Cal.App.3d 184 (*Salton City*).**13**  The *Raven's Cove* court noted that the " '*justification* for the procedural device whereby one may sue for the benefit of many *rests on considerations of necessity, convenience and justice*.' " (*Raven's Cove, supra*, at p. 795; see also *Salton City, supra*, at p. 191 [same]; *Residents of Beverly Glen, supra*, at p. 124 ["representative actions are '. . . based upon the equitable doctrine of virtual representation which " 'rests upon considerations of necessity and paramount convenience, and was adopted to prevent a failure of justice' " ' "].)  Finally, the *Raven's Cove* court held there were two requirements that must be satisfied for a representative action:  (1) "an ascertainable class," and (2) "a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented." (*Raven's Cove, supra*, at p. 795.)  With little discussion, the *Raven's Cove* court found that there was an ascertainable class (i.e., the HOA's members) and a well-defined community of interest, and that "considerations of necessity, convenience and justice under the circumstances provide ample justification for the use of the representative procedural device." (*Ibid*.)  It thus concluded "the [HOA] has standing to sue in a representative capacity for the damage to the individual units pursuant to . . . section 382." (*Id*. at p. 796.)

 *Raven's Cove* thus holds that, if certain requirements are met, section 382 confers standing on an HOA to sue in a representative capacity on behalf of its members for

---

**13** *Salton City* was expressly based on section 382.  (*Salton City, supra*, 75 Cal.App.3d at p. 189.)  *Residents of Beverly Glen* only mentioned section 382 in a parenthetical, but it cited numerous cases that were based on section 382.  (*Residents of Beverly Glen, supra*, 34 Cal.App.3d at pp. 125-126.)

20

damage to individual units. Plaintiff argues those requirements are met in this case. The trial court never reached that issue, however, because it found *Raven's Cove* simply "does not apply to the instant action." And it found *Raven's Cove* does not apply because it was decided prior to the enactment of the Davis-Stirling Common Interest Development Act (in 1985) and the Right to Repair Act (in 2002), both of which contain "specific standing requirements" applicable to HOAs. The trial court thus appears to have concluded that, once the Legislature enacted section 5980 and conferred standing on an HOA to sue in four specific circumstances, an HOA can *only* establish standing in those circumstances, and may not also establish standing pursuant to section 382. In other words, the trial court found section 5980's grant of standing to HOAs is *exclusive*. We disagree.

We note at the outset that the trial court's finding cannot be squared with *Raven's Cove* itself, which found that even though the HOA could not establish standing pursuant to section 5980, it could nonetheless establish standing pursuant to section 382. In other words, and unlike the trial court, the *Raven's Cove* court did not believe that section 5980's standing provision was exclusive.

There is one more recent case that held section 382 confers standing on an HOA to sue on behalf of individual homeowners, and that also appears to hold section 5980 is not exclusive: *Market Lofts Community Assn. v. 9th Street Market Lofts, LLC* (2014) 222 Cal.App.4th 924 (*Market Lofts*). The HOA in that case claimed a developer breached an agreement to allow the HOA and the individual homeowners to use 319 spaces in an adjacent parking structure " 'at no cost.' " (*Id*. at p. 928.) Despite this agreement, the developer began charging a monthly parking fee. The HOA sued the developer both on its own behalf and on behalf of its members, asserting claims for breach of fiduciary duty, breach of contract, and concealment, and seeking to recover over $1 million its members had paid in allegedly illegal parking fees. (*Id*. at p. 929.) The trial court sustained the developer's demurrer "on the sole ground that the HOA

21

lacked standing to sue" because it was the individual homeowners who had paid the fees. (*Ibid*.)

The appellate court reversed, holding the HOA had standing both in its own right and as a representative of the homeowners. The HOA had standing in its own right because it was a party to the agreement the developer allegedly breached. (*Market Lofts, supra*, 222 Cal.App.4th at p. 932.) As relevant here, the court also held "the HOA has standing to sue as a representative of the individual homeowners" pursuant to section 382. (*Market Lofts, supra*, at p. 932.) Citing *Raven's Cove*, the court noted there are two requirements that must be satisfied to bring a representative action under section 382: (1) an ascertainable class; and (2) a well-defined community of interest in the questions of law and fact. The court found both requirements were met. "Here, there is plainly an ascertainable class—the homeowners. There is also a well-defined community of interest concerning the relevant questions of law and fact. Each homeowner is subject to the same parking charges and any invalidity of the [contract] would affect the homeowners in the same manner. . . . Additionally, questions of necessity, convenience and justice likewise support the HOA's standing, because otherwise 267 homeowners would individually have to prosecute their claims." (*Market Lofts, supra*, at p. 933.)

The developer in *Market Lofts* argued the HOA lacked standing because the claims it was asserting were not among those identified in section 5980. Here, in its entirety, is the court's response to this argument: "To the extent the Developers also argue that the HOA lacks standing to sue because it is not claiming damage to a common area under [section 5980], such argument is without merit. This statute dealt with the standing of a homeowners association to sue 'in its own name as the real party in interest' in specific matters, including damage to the common area and enforcement of the governing documents. ([Section 5980].) This statute had nothing to do with a homeowners association's standing to sue in a representative capacity." (*Market Lofts, supra*, 222 Cal.App.4th at p. 934.) The *Market Lofts* court thus appears to have

22

concluded that section 5980 and section 382 provide alternative ways for an HOA to establish standing, and that even if an HOA does not have standing pursuant to section 5980, it may still be able to sue in a representative capacity pursuant to section 382. This, again, is contrary to what the trial court found in this case.

*Raven's Cove* and *Market Lofts* thus both support Plaintiff's argument that section 5980 is not exclusive, and that section 382 remains a viable alternative for an HOA seeking to sue on behalf of its members in some circumstances. It appears, however, that the issue of whether section 5980 was exclusive was not raised in *Raven's Cove*, and it is axiomatic that cases are not authority for propositions not considered. (See *Association for Los Angeles Deputy Sheriffs v. County of Los Angeles* (2021) 60 Cal.App.5th 327, 342.) Moreover, *Market Lofts* did not involve an HOA suing for damages to or defects in property it did not own or maintain, which is the situation in this case, and is also the primary situation with which section 5980 deals. *Raven's Cove* and *Market Lofts* thus do not definitively answer the question of whether section 382 remains viable in the circumstances presented in this case. It is to that question that we now turn.

*D. Is Section 5980 Exclusive, or are Section 5980 and Section 382 Alternatives?*

We begin with some familiar rules. "In construing statutes, 'our fundamental task is "to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute." [Citations.] We begin by examining the statutory language because it generally is the most reliable indicator of legislative intent. [Citation.] We give the language its usual and ordinary meaning, and "[i]f there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs." [Citation.] If, however, the statutory language is ambiguous, "we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history." [Citation.]' " (*Mays v. City of Los Angeles* (2008) 43 Cal.4th 313, 321.) We may also look to " 'canons of statutory construction to determine the Legislature's purpose,' " (*Carmack v. Reynolds* (2017) 2 Cal.5th 844, 850), while nonetheless keeping in mind that these canons are not

23

rules, "but tools, 'guides to help courts determine likely legislative intent. [Citations.]' " (*Burris v. Superior Court* (2005) 34 Cal.4th 1012, 1017.) " 'Ultimately we choose the construction that comports most closely with the apparent intent of the lawmakers, with a view to promoting rather than defeating the general purpose of the statute. [Citations.]' " (*Mays, supra*, at p. 321.)

We begin by examining the language of section 5980 itself. It grants an HOA standing to sue in its own name as the real party in interest and without joining its members in four circumstances, but it is silent as to whether those four circumstances are exclusive. For example, section 5980 does not say an HOA has standing *only* or *exclusively* in four circumstances; or that an HOA has standing in four circumstances *notwithstanding any other provision of law* or *notwithstanding section 382*, (see, e.g., *Arias v. Superior Court* (2009) 46 Cal.4th 969, 983 [phrase " 'notwithstanding any other provision of law' " is a legal term of art that declares the legislative intent to override contrary law]); or that *it is the intention of the Legislature to occupy the field of HOA standing*, (see, e.g., Gov. Code, § 12993, subd. (c) ["it is the intention the Legislature to occupy the field of regulation of discrimination in employment and housing encompassed by the provisions of this part"].) "We may not make a silent statute speak by inserting language the Legislature did not put in the legislation." (*Yeager v. Blue Cross of California* (2009) 175 Cal.App.4th 1098, 1103.) Because we cannot insert words into a statute that the Legislature omitted, we find section 5980 is not exclusive because the Legislature did not state it was exclusive. (See *Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 545.)

Our conclusion that section 5980 is not exclusive is buttressed by another principle of statutory construction cited by Plaintiff, namely, that " '[t]he Legislature . . . is deemed to be aware of statutes and judicial decisions already in existence, and to have enacted or amended a statute in light thereof.' " (*People v. Yartz* (2005) 37 Cal.4th 529, 538.) "[T]he Legislature is deemed to be aware of laws in effect at the time they enact new

24

laws and [is] conclusively presumed to have enacted the new laws in light of existing laws having direct bearing upon them." (*Burd v. Barkley Court Reporters, Inc.* (2017) 17 Cal.App.5th 1037, 1047.) Given that the Legislature is the law-making branch of government, it is eminently reasonably to deem it aware of both the laws it has enacted and judicial decisions interpreting those laws.

Section 5980 was originally enacted in 1976, and was amended in 1979 and 1985, and the 1985 amendment is largely identical to what section 5980 says today. (See *Orange Grove Terrace Owners Assn. v. Bryant Properties* (1986) 176 Cal.App.3d 1217, 1221 & fn. 1 [describing history of section 5980 and quoting 1985 amendment].) When section 5980 was amended in 1985, two cases had been decided that held section 382 conferred standing on an HOA to sue in a representative capacity on behalf of its members: *Raven's Cove, supra*, 114 Cal.App.3d 783 and *Del Mar Beach Club Owners Assn. v. Imperial Contracting Co.* (1981) 123 Cal.App.3d 898 (*Del Mar Beach Club*). As already discussed, *Raven's Cove* found section 382 conferred standing on an HOA to assert claims in a representative capacity for defects in individual units that it did not own. *Del Mar Beach Club* was a bit different. It involved a development where the HOA itself owned *all* of the real property and structures within the development except the interiors (or air space) of the individual units, and where the court thus easily concluded the HOA had standing to sue for defects in that property. (See *Del Mar Beach Club, supra*, at p. 906.) The court, however, went on to hold, "In addition to the Association's standing as owner, we also conclude the Association may maintain this action in a representative capacity on behalf of its members" pursuant to section 382, and it supported this holding, in part, by citing and discussing *Raven's Cove*. (*Del Mar Beach Club, supra*, at p. 906; see *id*. at pp. 906-908.)

Thus, when it amended section 5980 in 1985 to specify the circumstances in which HOAs have standing to sue in their own name and without joining their individual members, it did so with the knowledge that two cases (*Raven's Cove* and *Del Mar Beach*

25

*Club*) had recently held section 382 permits HOAs to bring representative actions on behalf of their members to recover for damages to property in a common interest development. We thus find it entirely reasonable to presume that if the Legislature had wanted to make section 5980 the exclusive basis for HOA standing, and to prohibit any further extension of section 382 to confer standing on HOAs, it would have said so. The fact that it did not supports our conclusion that section 5980 is not exclusive.

Plaintiff also cites the related canon of statutory construction that " 'there is a presumption against repeals by implication; they will occur only where the two acts are so inconsistent that there is no possibility of concurrent operation, or where the later provision gives undebatable evidence of an intent to supersede the earlier; the courts are bound to maintain the integrity of both statutes if they may stand together.' " (*In re Marriage of Hobdy* (2004) 123 Cal.App.4th 360, 367.) And, as our Supreme Court has emphasized, " ' "A court must, where reasonably possible, harmonize statutes, reconcile seeming inconsistencies in them, and construe them to give force and effect to all of their provisions. [Citations.] This rule applies although one of the statutes involved deals generally with a subject and another relates specifically to particular aspects of the subject." [Citation.] Thus, when " 'two codes are to be construed, they "must be regarded as blending into each other and forming a single statute." [Citation.] Accordingly, they "must be read together and so construed as to give effect, when possible, to all the provisions thereof." [Citation.]' " [Citation.] Further, " ' "[a]ll presumptions are against a repeal by implication. [Citations.]" [Citation.] Absent an express declaration of legislative intent, we will find an implied repeal "only when there is no rational basis for harmonizing the two potentially conflicting statutes [citation], and the statutes are 'irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation.' " ' " ' " (*State Dept. of Public Health v. Superior Court* (2015) 60 Cal.4th 940, 955-956.) Based on these canons of construction, Plaintiff argues we must maintain the integrity of both section 382 and section 5980 by holding they

26

specify alternative ways for HOAs to establish standing, and that section 5980 did not impliedly repeal section 382 as to HOAs. We agree.

Section 382 and section 5980 establish two different ways for an HOA to bring a lawsuit on behalf of its members. Under section 382, an HOA (like any other association) may bring a representative action on behalf of its members (i.e., the ascertainable class) if the members have "a well-defined community of interest in the questions of law and fact involved," and "considerations of necessity, convenience, and justice" support granting an HOA standing in the particular case. (*Raven's Cove, supra*, 114 Cal.App.3d at p. 795; *Market Lofts, supra*, 222 Cal.App.4th at p. 933.) Under section 5980, an HOA may sue in its own name without joining its members in four specific circumstances. We see no reason why both statutes cannot apply concurrently, such that if an HOA cannot establish standing under one, it may nonetheless be able to establish standing under the other. Indeed, that is essentially what happened in *Raven's Cove*, where the court found the HOA could not establish standing under section 5980, but could establish standing under section 382. Because there is no express declaration of legislative intent that section 5980 supersedes section 382, we can, and do, give effect to both. If Plaintiff can meet the requirements for bringing a representative action under section 382, it should be permitted to do so.

As discussed above, we find the Right to Repair Act's standing provision—section 945—incorporates section 5980's standing requirements. In *McMillin*, our Supreme Court held the Right to Repair Act provides "the virtually *exclusive* remedy" for construction defect claims, and the Legislature's intent in enacting it was to "reshape the rules governing construction defect actions." (*McMillin, supra*, 4 Cal.5th at pp. 247, 249, italics added.) *McMillin* did not specifically consider whether section 945 was exclusive. However, section 945 is in chapter 5 of the Right to Repair Act, which governs litigation procedures, and according to *McMillin*, chapter 5 "contains key provisions governing . . . the extent to which the Act provides the exclusive vehicle for recovery" of damages for

27

construction defects. (*McMillin, supra*, at p. 251.) Civil Code sections 943 and 944 are also in chapter 5. According to *McMillin*, "Section 944 defines the universe of damages that are recoverable in an action under the Act. (§ 944 ['If a claim for damages is made under this title, the homeowner is only entitled to damages for' a series of specified types of losses].) In turn, section 943 makes an action under the Act the exclusive means of recovery for damages identified in section 944 absent an express exception: 'Except as provided in this title, no other cause of action for a claim covered by this title or for damages recoverable under Section 944 is allowed.' (§ 943, subd. (a).) In other words, section 944 identifies what damages *may* be recovered in an action under the Act, and section 943 establishes that such damages *may only* be recovered in an action under the Act, absent an express exception." (*McMillin, supra*, at p. 251.) Thus, to the extent Plaintiff brings a claim for damages recoverable under the Right to Repair Act, the Right to Repair Act provides the "exclusive" means to bring that claim. (*McMillin, supra*, at p. 251.) And, as we have explained, an HOA may only bring an action under the Right to Repair Act if it meets the standing requirements of section 5980. As to a claim under the Right to Repair Act, the standing requirements of section 5980 are thus exclusive.

Although the Right to Repair Act is the exclusive vehicle for asserting certain claims, it is not the exclusive vehicle for asserting *all* claims. It expressly states "this title does not apply to any action by a claimant to enforce a contract or express contractual provision, or any action for fraud." (Civ. Code, § 943, subd. (a).) In other words, although Plaintiff may lack standing to bring the Right to Repair Act claims if it cannot meet the standing requirements of section 5980, it may nonetheless have standing to bring breach of contract and fraud claims if it can meet the requirements for bringing a representative action pursuant to section 382.

Plaintiff's first cause of action is expressly brought pursuant to the Right to Repair Act. As to that cause of action, we hold Plaintiff lacks standing to sue for defects in the individual units because it cannot meet the standing requirements of section 5980, but it

28

has standing to sue for defects in the common areas (and it at least nominally alleges such defects). Plaintiff's fifth cause of action is for breach of contract, and the sixth (nondisclosure) and seventh (misrepresentation) causes of action sound in fraud, and these causes of action are not subject to the Right to Repair Act.[14] As to the "defects in the common area" portion of the breach of contract and fraud claims, Plaintiff has standing. And as to the "defects in the individual units" portion of the claims (i.e., the "heart of this case"), Plaintiff *may* have standing *if* it can meet the requirements for bringing a representative action under section 382. On remand, the trial court will thus have to determine whether, as alleged in the complaint, Plaintiff meets those requirements.

We note that Defendants spend much time arguing about how to properly interpret—and limit—the cases applying section 382, what those cases require a plaintiff to show in order to bring a representative action, and whether Plaintiff meets those requirements. These are all issues for the trial court to decide in the first instance. (See, e.g., *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1022.)[15]

---

[14] Precisely where the breach of implied warranty and breach of fiduciary duty claims fit into this equation is a question that nobody addresses and that we need not resolve.

[15] *Brinker Restaurant Corp.* teaches the following: " ' "Because *trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action*, they are afforded great discretion in granting or denying [class] certification." [Citation.] A certification order generally will not be disturbed unless (1) it is unsupported by substantial evidence, (2) it rests on improper criteria, or (3) it rests on erroneous legal assumptions. [Citations.]' " (*Brinker Restaurant Corp. v. Superior Court, supra*, 53 Cal.4th at p. 1022, italics added.) *Brinker Restaurant Corp.* involved a true class action rather than a representative action pursuant to section 382. As with a class action, however, we find that "trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action," (*Brinker, supra*, at p. 1022) and that the decision to allow this case to proceed as a representative action pursuant to section 382 should be made by the trial court in the first instance.

29

# IV

## *Leave to Amend*

The trial court sustained the demurrer without leave to amend, and also denied Plaintiff's motion for reconsideration seeking leave to amend. "It is an abuse of discretion for the trial court to sustain a demurrer without leave to amend if the plaintiff demonstrates a reasonable possibility that the defect can be cured by amendment." (*Estate of Dito* (2011) 198 Cal.App.4th 791, 800-801.) Moreover, "a reviewing court is compelled to find an abuse of discretion in denying leave where the plaintiff presents a tenable basis of amendment on appeal even though the theory was not presented to the trial court." (*Powers v. Ashton* (1975) 45 Cal.App.3d 783, 790.) Plaintiff argues it should have been granted leave to amend to cure the standing defect by alleging that its members assigned it their rights against Defendants, and that it is thus suing as the assignee of its members. We agree.

As thoroughly explained in *CashCall, Inc. v. Superior Court* (2008) 159 Cal.App.4th 273, 287: "[A] named plaintiff's lack of standing at the beginning of an action is not necessarily fatal to continuation of the action. Although a complaint filed by a party who lacks standing is subject to demurrer, the rationale for the demurrer 'would be that there is a defect in the parties, since the party named as plaintiff is not the real party in interest. [Citation.]' (*Cloud v. Northrop Grumman Corp.* (1998) 67 Cal.App.4th 995, 1004 (*Cloud*).) Amendments to complaints under Code of Civil Procedure section 473, subdivision (a), are liberally allowed to substitute in plaintiffs with standing for original plaintiffs without standing. (*Cloud, supra*, at pp. 1004-1011; *Klopstock v. Superior Court* (1941) 17 Cal.2d 13, 19-21.) Code of Civil Procedure section 473, subdivision (a)(1), provides: 'The court may, in furtherance of justice, and on any terms as may be proper, allow a party to amend any pleading or proceeding by adding or striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect . . . .' As one authority explains: 'A suit is sometimes

30

brought by a plaintiff without the right or authority to sue, and the amendment seeks to substitute the real party in interest. Although the original complaint does not state a cause of action *in the plaintiff*, the amended complaint by the right party restates the identical cause of action, and amendment is freely allowed. [Citation.]' (5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 1155, p. 614.) The California Supreme Court recently recognized the authority of trial courts to allow amendment of complaints by plaintiffs without standing to substitute in new plaintiffs who are real parties in interest with standing: 'Defendants argue plaintiffs should not be permitted to substitute a new plaintiff because their failure to name the new plaintiff in their original complaint was not a mistake. No such rule exists. To the contrary, *courts have permitted plaintiffs who have been determined to lack standing*, or who have lost standing after the complaint was filed, *to substitute as plaintiffs the true real parties in interest*. [Citations.]' (*Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235, 243, italics added.).ˮ

Numerous cases agree. "Code of Civil Procedure section 473 must be liberally construed to permit amendment to substitute a plaintiff with standing for one who is not a real party in interest." (*Cloud v. Northrop Grumman Corp., supra*, 67 Cal.App.4th at pp. 1005-1006.) And again: "[S]ection [473] is construed to permit amendment to substitute a plaintiff with standing for one who is not a real party in interest." (*Powers v. Ashton, supra*, 45 Cal.App.3d at p. 790.) And again: "In general, courts liberally allow amendments for the purpose of permitting plaintiffs who lack . . . standing to substitute as plaintiffs the true real parties in interest." (*Foundation for Taxpayer & Consumer Rights v. Nextel Communications, Inc.* (2006) 143 Cal.App.4th 131, 136.)

Defendants do not disagree with Plaintiff's contention that the assignments cure the standing defect. They nonetheless argue the trial court properly denied leave to amend because even if the assignments cure the standing defect, the assigned claims

would be barred by the statute of limitations because the amendment would not relate back to the original complaint.[16]  Again, we disagree.

It is true that "leave to amend need not be granted if any possible amendment would inevitably be barred by the statute of limitations."  (*Cloud v. Northrop Grumman Corp., supra*, 67 Cal.App.4th at p. 1011.)  But, "California courts have established the rule that an amended complaint relates back to the filing of the original complaint, and thus avoids the bar of the statute of limitations, so long as recovery is sought in both pleadings on the same general set of facts."  (*Smeltzley v. Nicholson Mfg. Co.* (1977) 18 Cal.3d 932, 934.)  An amended complaint relates back to the original complaint "if it: (1) rests on the same general set of facts as the original complaint; and (2) refers to the same accident and same injuries as the original complaint."  (*Barrington v. A.H. Robins Co.* (1985) 39 Cal.3d. 146, 151.)  An amendment that "chang[es] nothing other than the identity of the plaintiff, would clearly pass the modern 'same general set of facts' test."  (*Cloud, supra*, at p. 1006.)  Courts have thus held that "an amendment to substitute in the real party in interest is entitled to relation-back effect."  (*Id*. at p. 1011.)  And again: "California allows great liberality in the amendment of pleadings, particularly when the only change is a substitution of parties without alteration of the substantive grounds of the suit.  [Citations.]  A plaintiff may amend his complaint to sue in his representative rather than individual capacity without stating a new cause of action."  (*Olsen v. Lockheed Aircraft Corp.* (1965) 237 Cal.App.2d 737, 741.)  We see no reason this same rule would not also allow Plaintiff to amend its complaint to sue as the assignee of its members rather than as the representative of its members.

---

**16**    Defendants also argue the original complaint is time barred, which was one of several alternative bases for their demurrer.  Because the trial court did not reach this issue, we need not consider it either.

*Jensen v. Royal Pools* (1975) 48 Cal.App.3d 717 (*Jensen*) is instructive. The original plaintiff in *Jensen* was an HOA that governed a condominium. It sued the developer for negligently constructing a swimming pool that was part of the common area. While the case was pending, *Friendly Village Community Assn., Inc. v. Silva & Hill Constr. Co.* (1973) 31 Cal.App.3d 220 was decided, which held an HOA lacks standing to sue for damages to common areas. (*Jensen, supra*, at pp. 719-720.) The HOA then amended the complaint to include as plaintiffs two individual condominium owners, both individually and as representatives of a class of condominium owners. Other than this one change, "[t]he factual allegations in the amended complaint [were] the same as those alleged in the original complaint." (*Id*. at p. 720.) The developer demurred on statute of limitations grounds, the trial court sustained the demurrer without leave to amend, and the appellate court reversed.

The court began by noting it was undisputed the statute of limitations had run by the time the amended complaint was filed, and the "sole issue on appeal" was thus "whether the amended complaint relates back to the original, timely, complaint." (*Jensen, supra*, 48 Cal.App.3d at p. 720.) The court easily concluded it did: " 'The modern rule with respect to actions involving parties *designated by their true names in the original complaint* is that, where an amendment is sought after the statute of limitations has run, *the amended complaint will be deemed filed as of the date of the original complaint provided recovery is sought in both pleadings on the same general set of facts*. . . . [Citation.] [¶] Even where new plaintiffs are substituted or added after the statute of limitations has run, the same rule applies." (*Id*. at pp. 720-721, first italics in original, second italics added.) The court also held this rule applies when new plaintiffs are substituted in because the original plaintiff lacked standing. (*Id*. at p. 721.)

So, too, in this case. Just as the HOA in *Jensen* was permitted to amend the complaint to substitute individual homeowners as plaintiffs in order to cure the standing defect, Plaintiff, in addition to amending to allege standing under any of the three statues

33

at issue, should be permitted to amend the complaint to allege it is suing as the assignee of its members.[17]  The trial court thus abused its discretion in denying leave to amend.

## DISPOSITION

Let a peremptory writ of mandate issue directing the respondent court to reverse its December 8, 2021 order sustaining the demurrer without leave to amend.  Plaintiff is entitled to recover its costs.  (Cal. Rules of Court, rule 8.493(a)(1)(A).)


/s/
EARL, J.

We concur:


/s/
RENNER, Acting P. J.


/s/
HOCH, J.[*]

---

[17]      As in *Jensen*, Plaintiff would also be permitted to substitute the members as plaintiffs.

[*]  Retired Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.